Stella McSPARRAN, Administratrix of
the Estate of Frank J. Katona,
Deceased,

v.

FORD MOTOR COMPANY
and
Vincent Montone, Inc.

Civ. A. No. 27767.

United States District Court
E. D. Pennsylvania.

Jan. 27, 1965.

Jack E. Feinberg and Richter, Lord,
Toll & Cavanaugh, Philadelphia, Pa., for
plaintiff.

Thomas Raeburn White, Jr., and
White & Williams, Philadelphia, Pa.,
for Ford Motor Co.

Francis E. Marshall, Philadelphia, Pa.,
for Vincent Montone, Inc.

BODY, District Judge.

After a jury verdict for the defendants, the plaintiff seeks a new trial.

The complaint was filed as the result of a truck accident which occurred on February 28, 1959 resulting in the death of Frank J. Katona; subsequently, Stella McSparran was named Administratrix of decedent's estate.

The decedent was killed while trying to negotiate a turn at approximately the bottom of the Brandonville Mountain road located in Schuylkill County, Pennsylvania. This hill road was described as being a mile to a mile and a quarter in length with a rather steep grade. The truck in question, a Ford, was sold to the decedent on May 7, 1958 by Vincent Montone, Inc., an authorized Ford Motor Company dealer, nearly ten months before the date of the accident. From that date until the time of the accident the vehicle was driven approximately 29,500 miles with no services, no maintenance, and no alterations upon the truck motor by Vincent Montone, Inc., except on items of body damage repairs during January of 1959, with which repairs we are not concerned as related to the accident.

Plaintiff contended that the accident was the result of a defective manufacture and fabrication of the air compressor belt, which was a component part of the air brake system of the truck. The purpose of this belt was to transmit power from the crankshaft to the air compressor, thus maintaining the reserve of air necessary to cause the air brakes on the truck to function properly at all times. Once the belt was broken, the air compressor would cease to function with the end result that no additional air would be produced for the tank. However, the air brake system would continue to function under these conditions with sufficient air to bring the vehicle to a stop before the air was exhausted. A buzzer would sound when the air pressure in the reservoir tank would reduce to approximately sixty pounds, thus warning the driver of a loss of air in the tank and the compressing system.

The resulting action would be the ultimate inability of the air brakes to function. It is important to note that the truck also had a mechanical brake but there is no testimony as to its condition.

The only survivor and eye witness to the accident was Frank J. Katona, Jr., son of the decedent, then age seventeen. The witness testified that when the truck (a gross weight of 25,000 pounds), carrying eight tons of coal, was less than one-fourth of the way down the hill, he heard a sharp slapping sound from under the hood, which was followed immediately thereafter by the sound of the air brake buzzer, indicating a failure in the air pressure system of the brakes. Further testimony by the witness revealed that the decedent took the truck out of third low gear in an attempt to shift into second low gear when proceeding at least at twenty (20) to twenty-five (25) miles per hour. Thereafter, decedent and son rode the truck down the hill with neither brakes operating, nor with the engine in gear, reaching a speed of one hundred (100) to one hundred fifty (150) miles per hour at the time the witness last remembers, which was at a point still on the road near the impact with the tree, which tree was off the road. This tree was to the right of a prolongation of the center line of Brandonville Mountain road, and off to the left of another road going slightly upgrade. Decedent's son testified that they tried to turn right, up the other hill. This is an important factor as one of the witnesses for the defendant, in explaining the travel route of the truck, contended that the decedent tried to turn right instead of going straight ahead and continuing down to the bottom of the hill. Pictures indicate the "Y" in the roads.

Defendants contended that the belt was not defectively manufactured; that the belt was broken as a result of impact rather than through wear or a defect therein; that the accident was the result of decedent's improper maintenance of the brake system of the truck; that one of the brake hoses of the air system,

which was produced by the defendants, was the reason for the loss of pressure since it evidenced excessive wear due to it rubbing against the chassis; and that even in the event of any type of failure in the production of air pressure, sixty pounds of pressure would remain in the reservoir of the brake system which would be indicated by the sounding of a buzzer warning that there was enough air pressure in the reserve tank to stop the truck at least one more time.

Both plaintiff and defendants relied on expert testimony to prove their respective contentions to the jury. After a lengthy twelve day trial, which was vigorously and ably conducted by all parties, the jury was submitted the following interrogatories, and their answers thereto are shown:

"1. Was Ford Motor Company negligent?　　No.

"2. Was Vincent Montone, Inc. negligent?　　No.

"3. Did Ford Motor Company breach any warranty?　　No.

"4. Did Vincent Montone, Inc. breach any warranty?　　No.

"4(a) If you answer "yes" to Question #4— did the breach of warranty of Vincent Montone, Inc. result from any repairs or replacement of any parts from the time the truck was sold to the decedent on May 7, 1958 up until the time of the accident?　　(No answer)

"5. If you have answered "yes" to any of Questions #1 through #4—was such negligence or breach of warranty the proximate cause of the accident?　　(No answer)

"6. Was decedent Frank Katona guilty of any negligence which contributed to the happening of the accident?　　Yes.

"7. If you have answered "yes" to any of Questions #1 through #5 inclusive; and "no" to Question #6—answer the following:　　(No answer)

"8. In what amount do you assess damages under the Wrongful Death Act?　　(No answer)

"9. In what amount do you assess damages under the Survival Act?　　(No answer)"

———◆———

Plaintiff has alleged that this Court committed four prejudicial errors during the trial and, therefore, is entitled to a new trial. In view of the aforementioned interrogatories submitted to the jury, and their answers thereto, this Court deems it not essential to discuss in great detail each contention of the plaintiff.

I. DID THE TRIAL JUDGE ERR IN AFFIRMING AND READING TO THE JURY THE DEFENDANT FORD MOTOR COMPANY'S 4TH POINT FOR CHARGE?

Ford Motor Company's fourth point for charge, as submitted to the jury, states (N.T. p. 1674):

"4. (Affirmed in part) If you find that the compressor belt alleged to have been the cause of the accident was manufactured by someone other than defendant Ford Motor Company but incorporated into the decedent's truck by defendant Ford Motor Company, I charge you as a matter of law that the whole duty of defendant Ford Motor Company was to use reasonable care to select a proper design and to make a reasonable inspection of the belt. The burden is upon the plaintiff to prove upon the preponderance of the credible evidence that the defendant has breached any of these duties."

Plaintiff has alleged that the Trial Judge was inconsistent in his charge and did not clarify the relevant issue as to this point to the jury since the Court read the plaintiff's twenty-ninth and thirty-first points for charge, which plaintiff alleged is almost a verbatim quote of Section 400 of the Restatement of Torts:

"One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."

Plaintiff concedes that no Pennsylvania appellate case can be found showing that the above-quoted section is the law of Pennsylvania, but contends that the Pennsylvania Appellate Courts have followed generally the Restatement of Torts concerning manufacturer's liability, and therefore would naturally follow Section 400 when applicable.

■ This Court will not speculate as to what the Pennsylvania Appellate Courts may decide in reference to Section 400 of the Restatement of Torts. In any event, plaintiff was not prejudiced by the alleged inconsistency of the Trial Judge. A careful review of plaintiff's points for charge, in particular points numbered 3, 5, 15, 19, 20, 24, 26, 27, 29, 31, 32, 33, 34, emphasizes that plaintiff caused the jury to know whether Ford Motor Company was the manufacturer of the belt and the responsibility of the same.

Plaintiff submitted 51 points for charge; 31 points were affirmed by the Court, 17 points were either affirmed in part or covered in the general charge of the Court, and 3 points were refused by the Court. The plaintiff's points certainly brought home to the jury the contentions of the plaintiff in great detail, and when considered in connection with all other points, the general charge, and the interrogatories, there can be no doubt that the jury fully comprehended its problems. However, it is to be noted again at this time that the jury found no breach of warranty by either of the defendants, and the plaintiff was found guilty of contributory negligence. Thus plaintiff's first contention is without merit even if it were well taken, and no new trial would be warranted.

## II. WAS IT FUNDAMENTAL PREJUDICIAL ERROR TO ADMIT THE TESTIMONY OF THE WITNESS, PALMER, ATTEMPTING TO RECONSTRUCT THE ACCIDENT?

■ Mr. Robert Palmer, employed by Ford Motor Company as a brake engineer, was introduced by the defense as an expert. He ably qualified himself, in the writer's opinion, by showing a life work history and education in brake engineering and testing, including both the physical and theoretical application of his life's work. Plaintiff contended that Mr. Palmer exceeded the scope of his expertise when he was permitted to answer a question asked in regard to what had happened to the truck just before it hit the tree. The witness testified that it was his personal opinion that the truck tried to turn right and then rolled sideways through the guardrail, and rolled over completely once and came to rest. Other testimony showed that the loaded coal was found some distance beyond the truck.

The Court permitted the witness to answer this question because he had

demonstrated to the Court that his opinion would not be one of an inexperienced and unknowledgeable person. Mr. Palmer had road-tested many brake systems himself by taking truck vehicles out on a specified series of road tests to study personally the operation and the brake systems under various prescribed procedures. It is significant to note that these tests included driving trucks down steep, winding hill roads, and the application of brakes under a multiplicity of circumstances.

Furthermore, Mr. Palmer was present throughout the entire trial, heard the witnesses, saw all the exhibits and photographs, and personally inspected the scene of the accident, as well as the vehicle following the accident. With his many years of experience and a wide background of knowledge of the subject, this Court ruled properly that the witness was more than qualified to give his expert personal opinion as to the propounded question. It was the duty of the jury, as outlined in my charge, to determine the credibility of Mr. Palmer and to reject or accept his testimony as they saw fit.

III. WAS IT FUNDAMENTAL PREJUDICIAL ERROR FOR THE TRIAL COURT TO PERMIT THE EXPERT WITNESS, PRUYN, TO TESTIFY THAT DECEDENT'S FAILURE TO ADJUST THE BRAKES ON HIS TRUCK WOULD BE "NEGLIGENT"?

IV. DID THE TRIAL JUDGE COMMIT PREJUDICIAL ERROR IN CHARGING THE JURY TO CONSIDER PENNSYLVANIA STATUTES RESPECTING RECKLESS DRIVING, SPEEDING, DRIVING ON MOUNTAIN HIGHWAYS AND COASTING DOWNHILL?

These last two contentions of the plaintiff will be considered simultaneously since they are closely related.

■ Mr. Pruyn was called by the plaintiff as his expert in the field of automotive maintenance. However, a careful review of Mr. Pruyn's complete testimony reveals that the witness contended that his expertise was not limited to automotive maintenance but extended from the manufacture and production of fan belts to the proper and safe driving procedures for motor vehicles. He further volunteered on direct examination that according to a manual on safe driving procedures written by him for the War Department, dated 1952 (N.T. p. 451), it would be an unsafe procedure to drive a vehicle out of gear while descending a hill. (N.T. p. 452) Thus plaintiff's own expert "opened the door" and it was not irrelevant, incompetent or improper for him to testify that it would be presumably negligent to operate a truck for 29,500 miles without adjusting the brakes. He said, "Operating a vehicle without adjusting the brakes for 29,000 miles would be stupid. * * * Presumably negligent. * * *" (N.T. p. 569).

This testimony occurred on the cross-examination of plaintiff's expert where, obviously, the counsel interrogating the witness could in no way anticipate the answer. In addition, any reasonable person would certainly agree that this involved no jury question for everyone's common knowledge of a motor vehicle would lead to this conclusion. Plaintiff's examination invited this question.

■ Plaintiff contends that the Trial Judge committed error in reading to the jury sections of the Motor Vehicle Code as found in 75 P.S. §§ 1001(1), 1002(a), 1023 and 1026.[1] These sections were per-

1. "§ 1001. Reckless driving is unlawful, and for the purpose of this act, is construed to include the following:

"(1) Any person who drives any vehicle or streetcar or trackless trolley omnibus upon a highway carelessly disregarding the rights or safety of others, or in a manner so as to endanger any person or property.

"§ 1002(a). Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the

tinent and relevant to the issues, especially §1026. It is to be noted that the expert, Mr. Pruyn, read from said War Department Manual, as part of the plaintiff's case, the rules concerning descending. (N.T. p. 452) These rules clearly fit into the portions of the statutes read to the jury.

Immediately following the reading of these statutes the Trial Judge also charged the jury as to the sudden emergency doctrine which would excuse the decedent for permitting the truck to get out of control. If anything, this was perhaps more favorable to the plaintiff than the facts disclosed and prejudiced no rights of the plaintiff. The Court instructed the jury as to the law applicable in this case, and that it was the duty of the jury to apply this law as they saw fit in relation to the evidence presented to them. I can find no error in all of these instructions.

The trial of this case consumed twelve days during which the Trial Judge allowed plaintiff's counsel wide latitude in his testimony. To the writer, the evidence in plaintiff's case was very weak, and the case likely turned on the credibility of witnesses. As a shining example, when the first witness testified that the truck was traveling at one hundred (100) to one hundred fifty (150) miles per hour (N.T. p. 33) before the accident (repeated in a hypothetical question), if the jury should disbelieve this testimony it may be said without speculation that in like manner the jury disbelieved that the witness heard a slapping sound under the hood (N.T. p. 26), and that the mechanical brake was back to the seat (N.T. p. 28). Finally, witness said that be blacked out as "we kept *gaining* speed". The jury, I am

traffic surface, and width of the highway, and of any other restrictions or conditions then and there existing; and no person shall drive any vehicle, upon a highway at such a speed as to endanger the life, limb, or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead.

sure, applied the old legal maxim "Falsus in uno, falsus in omnibus".

The interrogatories submitted to the jury, and their answers thereto, clearly indicate the defendants were not negligent, and that plaintiff's decedent was guilty of contributory negligence; and further, that there was no breach of warranty.

I have carefully reviewed the contentions of the plaintiff and I find them without merit, so that the motion for new trial is denied.

"§ 1023. The operator of a motor vehicle traversing mountain highways shall hold such motor vehicle under control, and as near the right-hand side of the highway as reasonably possible.

"§ 1026. The operator of a motor vehicle, when traveling upon a downgrade upon any highway shall not coast, with the gears of such vehicle in neutral or clutch disengaged."