Henry S. DYCHALO and Blanche
Dychalo, h/w

v.

COPPERLOY CORPORATION

v.

CONGOLEUM INDUSTRIES, INC.

Civ. A. No. 75–1422.

United States District Court,
E. D. Pennsylvania.

Feb. 23, 1978.

Joseph Lurie, Philadelphia, Pa., for plaintiff.

L. Carter Anderson, James K. Martin, Philadelphia, Pa., for defendants.

## MEMORANDUM

EDWARD R. BECKER, District Judge.

Plaintiffs brought this products liability diversity action to recover for injuries suffered in an accident involving an allegedly defective loading ramp. The jury returned a verdict absolving defendant Copperloy, manufacturer of the ramp, from liability. Plaintiffs have moved to vacate that judgment and for a new trial. In support of that motion, they have asserted three trial errors: (a) that the testimony of defendant company's chief engineer and vice president, Arthur F. Sargent, should have been excluded because of defendant's failure to comply with pre-trial notification procedures relating to expert testimony; (b) that Mr. Sargent, though not properly qualified as an expert witness, was permitted to proffer expert testimony; and (c) that defendant's expert witness Paul K. Goldberg was not properly qualified to give expert testimony. We examine these contentions in order.

### A. Pre-trial Notification that Arthur F. Sargent Would be an Expert Witness

Plaintiffs rely on Federal Rules of Civil Procedure 26(b)(4)(A) and 26(e)(1)(B), the former permitting interrogatories concerning the adverse party's proposed expert witnesses, and the latter placing a duty of supplementation on the responding party concerning the identity of expert witnesses. Plaintiffs assert that, while defendant did in fact supplement the original interrogatories, the supplementation was misleading because it merely referred to the possibility of defendant's calling, in addition to Mr. Goldberg, "one or more of its employees." Defendant then added that "upon their determination plaintiffs will be promptly advised." Plaintiffs contend they were not so advised by any further supplementation, and that it was not until they rested their case that defendant's counsel apprised them of his intention to call Mr. Sargent, acting chief engineer and vice president of the company, in violation of Rule 26. Defendant counters this argument by asserting plaintiffs were adequately notified of Mr. Sargent's identity by: (1) the supplementation quoted above which stated that several employees might be called; (2) defendant's specific identification of Mr. Sargent and

reservation of the right to call him in its pre-trial memorandum, which stated: "Defendant therefore reserves the right to introduce expert testimony as necessary from the identified expert or another, if necessary (including defendant's employee Arthur Sargent) following the Deposition of plaintiff's new expert . . . "; and (3) by the fact that Mr. Sargent took the affidavit on defendant's answers to interrogatories.

We have reviewed the record in light of these contentions, and have come to the following conclusions: (a) Rule 26 was not violated because the value protected by Rule 26(e), the prevention of surprise, was amply protected by the notification that did occur in this case; (b) even if Rule 26(e) had been violated, plaintiffs' proposed remedy at trial—that of excluding Mr. Sargent's testimony—would have been unwarranted; and (c) even if the testimony should have been excluded, plaintiffs have made no showing they were prejudiced by its inclusion within the meaning of the harmless error doctrine, which would be necessary before we could grant their new trial motion.

■ We deem the supplementation required by rule 26(e)(1)(B) to have been constructively complied with by defendant's supplementation stating that additional employees might be called, when coupled with a pre-trial memorandum specifically identifying Mr. Sargent as a possible expert and the execution of the affidavit to answers to interrogatories by Mr. Sargent. We note in this regard that plaintiffs are not claiming "surprise" as to any novel theory offered by Mr. Sargent—their sole complaint is that they did not know that he would be called as a witness. The three notices above seem sufficient to afford them such notice. If not, they were at least sufficient to raise a question in plaintiffs' mind which would give them the duty to make pre-trial inquiry about Mr. Sargent.

■ Even if we are incorrect in finding constructive compliance with 26(e)(1) in light of the other notices, the appropriateness of plaintiffs' proposed cure at trial—

the exclusion of all Mr. Sargent's testimony—does not logically follow. There is no exclusionary rule in 26(e)(1) itself, and plaintiffs have the burden of establishing the justification for such an exclusion. *Dudley v. South Jersey Metal, Inc.,* 555 F.2d 96 (3d Cir. 1977) teaches that the exclusion of evidence is an "extreme" sanction. *Id.* at 99. *Meyers v. Pennypack Woods Home Ownership Association,* 559 F.2d 894 (3d Cir. 1977) describes the factors to be considered in applying this extreme sanction. In regard to those factors, 559 F.2d at 904, we make the following findings: (1) the notice actually given as to Mr. Sargent's identity rendered minimal or non-existent any prejudicial surprise to plaintiffs; (2) the plaintiffs had the opportunity to cure the effects of any prejudicial surprise that did exist by taking (as we directed them to) Mr. Sargent's deposition at a Court-proposed recess in the trial. Counsel for plaintiffs specifically waived doing so on several occasions, and insisted on continuing the in-court cross examination of Mr. Sargent; (3) there is no factual basis in the record for finding that defendant's failure to identify Mr. Sargent at an earlier stage in the litigation resulted from bad faith or wilful non-compliance with a court order, and we decline to so find. In light of these findings, there is no justification under *Meyers* for excluding Mr. Sargent's testimony.

■ Finally, even if we erred in admitting Mr. Sargent's testimony, for plaintiff to succeed in their instant motion to have judgment vacated and a new trial granted they must demonstrate that this error affected "substantial rights of the parties." If no such rights were affected, Fed.R. Civ.P. 61 instructs us that we "must disregard" any such error. Plaintiffs have not described how their rights were adversely affected by the inclusion of Mr. Sargent's testimony in any specific fashion, nor can we find a basis in the record for a conclusion that they were in fact prejudiced. Mr. Sargent did not propound a novel or surprising theory of non-liability, as occurred in plaintiffs' cited authorities, *Weiss v. Chrysler Motors Corporation,* 515 F.2d 449

(2d Cir. 1975) and *Tabatchnick v. G. D. Searle & Co.,* 67 F.R.D. 49 (D.N.J.1975). Rather, his testimony was cumulative. Nor was the testimony decisively important to defendant's case. This contrasts sharply with the testimony in *Meyers, supra,* which was described as "critical." 559 F.2d at 904. Instead of describing any particular manner in which they were prejudiced, plaintiffs have merely vaguely alleged "extreme prejudice" in the instant motion. Apparently their theory is that *any* error under rule 26(e)(1) is *per se* "substantially" prejudicial within the meaning of Rule 61. We can find no grounding, in logic or case law, for such a *per se* rule.

## B. *Expert Qualifications of Mr. Sargent*

█ Plaintiffs assert that Mr. Sargent was unqualified to express an "opinion" about the possibility of his company designing and manufacturing extra supports for the loading ramp. Mr. Sargent was plainly qualified to proffer such testimony: he had a college degree in mechanical engineering, he had taken graduate night courses in engineering, he was defendant's acting chief engineer as well as vice president for engineering and sales, and he had worked for defendant for over twenty years. Five kinds of expert qualifications are listed in Fed.R.Evid. 702—knowledge, skill, experience, training, and education. Any one of them is alone sufficient. In our judgment, Mr. Sargent was qualified by experience alone to answer the question posed. *See Southern Cement Company v. Sproul,* 378 F.2d 48 (5th Cir. 1967); *Vlases v. Montgomery Ward & Co.,* 377 F.2d 846 (3d Cir. 1967). He was similarly qualified by training and education. *See McSparran v. Ford Motor Co.,* 238 F.Supp. 329 (E.D.Pa.1965).

## C. *Expert Qualifications of Paul Goldberg*

Plaintiffs finally argue that defendant's expert witness, Paul Goldberg, concededly an expert in metallurgical engineering, was never properly qualified to testify about the safety of the ramp at issue in terms of its design and construction, and about the fea-sibility of alternate designs. Mr. Goldberg had a degree in metallurgical engineering from Drexel University, and had done further graduate study in materials engineering. His experience included work for Boeing Aircraft as an equipment inspector and as an evaluator of air-craft malfunctioning, and extensive experience as a consulting engineer in matters of design safety. Among many other professional societies, Mr. Goldberg is a member of the American Society for Safety Engineers.

█ In our judgment, Mr. Goldberg was clearly qualified by his experience to testify in this case, just as Mr. Sargent was. Even if he were not qualified by experience, his education would qualify him, for as he explained, at issue in the lawsuit was "a very, very simple engineering principle . . . simple physics involving balance, the placement of an item to support another item . . . a general engineering problem." Plaintiffs contend that because Mr. Goldberg's degree was in "metallurgical" engineering, he was unqualified to express an opinion that sounded in "mechanical" engineering. We disagree. The fact that an engineer goes on to specialize does not thereby render him incompetent to testify as to the basic principles common to all engineering study. We find pertinent on this issue the recent decision in *Wylie v. Ford Motor Co.,* 536 F.2d 306, 308 (10th Cir. 1976), which held that knowledge of basic physics rendered a physicist competent to testify concerning the design safety of a car's ball jointed front suspension. The court found no necessity for the expert to be an engineer, let alone an automotive engineer, to testify as an expert because the basic laws of physics underlie all engineering specialization. Following apparently similar logic, *Dazenko v. James Hunter Machine Co.,* 393 F.2d 287 (7th Cir. 1968), permitted a "civil" engineer to testify as an expert on design safety over the objection that only a "mechanical" engineer could be qualified. The same principle was demonstrated in the field of medicine by *Harris v. Smith,* 372 F.2d 806, 812 (8th Cir. 1967). *Harris* found reversible error in the exclu-

sion of a psychiatrist's testimony concerning a compound fracture, resulting leg infection, and the necessity for an amputation. The court concluded that the basic medical training received by all doctors, and the general practice engaged in by this physician, compelled the conclusion of expert qualification. The fact that the physician had chosen to specialize in "psychiatry" rather than "orthopedics" was not grounds to disqualify him.

For the reasons expressed above, plaintiffs' motion for a new trial must be denied. An appropriate order follows.