John W. WILSON

v.

VOLKSWAGEN OF AMERICA, INC., etc.

Civ. A. No. 75-0164-R.

United States District Court, E. D. Virginia, Richmond Division.

March 3, 1978.

---

Stuart W. Settle, Richmond, Va., Henry H. Wallace, Pittsburgh, Pa., for plaintiff.

Richard L. Williams, Richmond, Va., for defendants.

## ORDER

WARRINER, District Judge.

This matter is before the Court on defendants' motion of 30 December 1977 to permit introduction of evidence relating to plaintiff's alleged non-use of an available seat belt. As plaintiff has filed his responsive brief and defendants have filed their rebuttal brief, the matter is ripe for disposition.

The relevant facts of the case are simple and not in dispute. On 1 April 1973 a 1972 Volkswagen Type I sedan, owned by Dayla Rae Wobbeking and driven by the plaintiff, was involved in a single-car accident on Interstate 95 near Fredericksburg, Virginia. Although the Volkswagen was equipped with seat belts, defendant intends to prove that plaintiff was not wearing a belt at the time of the accident. The plaintiff suffered multiple injuries rendering him a paraplegic.

In his complaint, plaintiff alleges defects and negligence in the design, manufacture, and assembly of the Volkswagen. It appears that plaintiff is now proceeding upon two distinct theories. The first theory, related to the cause of the accident itself, asserts that two bolts and lock nuts connecting the flexible coupling assembly of the steering mechanism failed, fell out, or were never present. The second theory,

dealing with the strength of the Volkswagen roof, does not concern the cause of the accident itself, but relates to the purported cause of plaintiff's specific injury. It is asserted that when the Volkswagen rolled over during the accident the roof collapsed on his upper body causing a compression fracture of his spine.

Defendants argue that they are entitled to show that with proper use of seat belts there is no unreasonable danger. The Court should give cognizance to the full design of the automobile, defendants point out, including safety devices such as seat belts. Defendants argue that the automobile, when viewed as a whole, including the availability of seat belts, was not defective in design. Defendants say they must be permitted to show that seat belts were available in order to defend the "whole automobile."

## I

Plaintiff asserts that during the course of the first trial of this action defendants moved this Court to permit the introduction of certain testimony relating to the seat belts and the question presented has already been decided by the Court. Hence, plaintiff argues, the doctrine of law of the case precludes defendants from raising this motion again.

In addressing this doctrine, the Court in *Petersen v. Federated Development Co.,* 416 F.Supp. 466, 473 (S.D.N.Y.1976) held that the doctrine provides "that where a court has enunciated a rule of law to be applied in a case at bar, it establishes the law which will normally apply to the same issues in subsequent proceedings in that case."

The Fifth Circuit Court of Appeals in *Wm. G. Roe & Co. v. Armour & Co.,* 414 F.2d 862 (5th Cir. 1969) held, as did the Court in *Petersen, supra,* at 473, that the law of the case doctrine "is not an inexorable command." 414 F.2d at 867. In examining the doctrine, the Court stated the following:

> Where, as here, a party to the action raises serious objections to the soundness of the first decision, the Court, in all but special circumstances . . . should re-examine the first decision as a prerequisite to its implementation as the law of the case. [414 F.2d at 868].

■ In the instant case, the prior treatment of the issue now before the Court occurred when the issue of liability had been foreclosed. Its admissibility was considered only in relation to damages. Consequently, it is the decision of the Court that even if the doctrine is applicable, the Court will nevertheless re-examine the issue in light of both liability and damages.

## II

■ This is a diversity case and in deciding the motion at bar the Court must apply the law of the forum. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937). However, where the Commonwealth has not yet addressed itself to the issue in question, as in the case at bar, the Court's assigned role is to predict and not to form State law. Hence, the Court should "utilize those guide posts which are available." *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.,* 499 F.2d 146, 147 (3rd Cir. 1974). The Court is aware of two such guideposts in the instant case.

■ First, although the Virginia case law is silent in regard to the extent a car manufacturer owes a duty to design and market a "crashworthy" vehicle,[1] the Fourth Circuit Court of Appeals held in *Dreisonstok v.*

---

1. The term "crashworthiness," as defined in the Motor Vehicle Information and Cost Savings Act, means the protection that a passenger motor vehicle affords its passengers against personal injury or death as a result of a motor vehicle accident. 15 U.S.C. § 1901(14). Crashworthiness has similarly been defined as "the relative ability of an automobile to protect its passengers during the second collision." Note, *Liability for Negligent Automobile Design,* 52 Iowa L.Rev. 953, 958 (1967).

The term "second collision" in these definitions refers to the collision of the passenger with the interior part of the automobile after the initial impact or collision. *Larsen v. General Motors Corp.,* 391 F.2d 495, 502 (8th Cir. 1968). Courts have described "enhanced injuries" as second accident injuries—those injuries that occur after the initial accident. Note, *Automobile Manufacturer Liable for Defective Design that Enhanced Injury After Initial Accident,* 24 Vand.L.Rev. 862, 864 (1971).

*Volkswagenwerk, A.G.,* 489 F.2d 1066, 1069 (4th Cir. 1974) that, for purposes of that decision, it may be assumed that the trend of Virginia decisions is that Virginia joins those jurisdictions which impose liability upon the manufacturer for negligent design in failing to take reasonable precautions against unreasonable risks of harm to passengers by reason of a collision. No Virginia decision since casts doubt on the Fourth Circuit's assumption.

The second guidepost is set forth in Va. Code § 46.1–309.1(b) (1974 Repl.Vol.) which states that "[f]ailure to use such safety lap belts or a combination of lap belts and shoulder straps or harnesses after installation shall not be deemed to be negligence."

### III

As hereinbefore stated, plaintiff argues that when the Volkswagen rolled over during the accident the roof collapsed on plaintiff's upper body causing a compression fracture of his spine. It is plaintiff's contention that the roof was defective and, hence, the manufacturer should be held liable. It is defendants' position that the jury should give cognizance to the *full* design of the automobile, including safety factors, when deciding whether the automobile was in fact defective. Defendants point out that it is not sufficient merely to prove a defect in the roof. The whole automobile must be shown to be defective.

The Court will admit evidence that the Volkswagen was equipped with seat belts for purposes of determining whether the automobile was defectively designed. The jury will be instructed that they must consider whether the auto *as a whole* was defective and unreasonably dangerous. *See Melia v. Ford Motor Co.,* 534 F.2d 795, 800 (8th Cir. 1976).

The comment that the Eighth Circuit Court of Appeals made in *Melia, supra,* at 805, seems particularly appropriate here:

No doubt the manufacturers of automobiles could design and build an automobile with the strength and crash-damage resistance features of an M–2 army tank. I believe the average and reasonable automobile user desires only a reasonably

safe, economical form of motor transportation. No greater burden of design-performance ought to be imposed upon automobile manufacturers by either judge or jury.

Similarly, in *Dreisonstok, supra,* at 1072, the Fourth Circuit stated the following:

[I]t is a commonplace that utility of design and attractiveness of the style of the car are elements which car manufacturers seek after and by which buyers are influenced in their selections. In every case, the utility and purpose of the particular type of vehicle will govern in varying degree the standards of safety to be observed in its design. This was recognized in the Traffic and Motor Vehicle Safety Act, which undertakes "to establish motor vehicle safety standards for motor vehicles." In prescribing such standards, the Secretary is directed to "consider whether any such proposed standard is *reasonable, practicable and appropriate for the particular type of motor vehicle . . . .*" Stated somewhat differently, the safety of every type of vehicle is to be evaluated under this Act in connection with what is "reasonable, practicable and appropriate" for its special type. And this is the same rule that has been judicially applied, even in *Larsen* type cases. Thus, in *Dyson v. General Motors Corp.* [Pa., 298 F.Supp. 1064, 1073] . . . the Court emphasized that design safety must take account of "differentiation between various models of automobile" and involves "a recognition of the inherent characteristics of each." It pointed out that a convertible could not be made "as safe in roll-over accidents as a standard four-door sedan with center posts and full-door frames." The convertible was only required to be as reasonably safe as its intended use would allow and "not appreciably less safe than other convertibles." Price is, also, a factor to be considered, for, if a change in design would appreciably add to cost, add little to safety, and take an article out of the price range of the market to which it was intended to appeal, it may be "unreasonable" as well as "im-

practical" for the Courts to require the manufacturer to adopt such change. Of course, if an article can be made safer and the hazzard of harm may be mitigated "by an alternate design or device at no substantial increase in price", then the manufacturer has a duty to adopt such a design but a Cadillac may be expected to include more in the way of both conveniences and "crashworthiness" than the economy car. (Citations omitted). (Emphasis added).

In a footnote to the opinion in *Dreisonstok, supra,* at n. 18, the Fourth Circuit stated that "safety may not be sacrificed unreasonably and any vehicle should be made as safe as it reasonably can, considering its special purpose and 'intended use'; but standards of safety themselves must take into account the utility of the vehicle."

### IV

■ If the jury finds that the Volkswagen was defective even though equipped with seat belts, the question remains as to whether the Court should allow evidence of plaintiff's alleged non-use of his seat belt to be introduced. The Court is cognizant of the flux of the law pertaining to this issue as evidenced by a split of opinion among various courts throughout this country, State and federal alike.[2] As noted, Virginia case law is silent on the issue. Although it is impossible to predict with certainty and difficult to predict at all how the Virginia courts would decide this question, the Court is of the opinion that on the facts of the instant case evidence of non-use of a seat belt would be admitted for consideration by the jury in mitigation of damages.

In *Spier v. Barker,* 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974), a personal injury case in which the court admit-

ted evidence on failure to wear seat belts, the trial judge instructed the jurors as follows:

"If you find that a reasonably prudent driver would have used a seat belt, and that she would not have received some or all of her injuries had she used the seat belt, then you may not award any damages for those injuries you find she would not have received had she used the seat belt. The burden of proving that some or all of her injuries would not have been received had she used the seat belt rests upon the [defendants]". [363 N.Y.S.2d at 919, 323 N.E.2d at 166].

At the request of counsel for the plaintiff, the trial judge also stated to the jury that " 'there isn't any law in the State of New York that requires a person to wear a seat belt or to anticipate the happening of an accident.' " [Id.] The Court of Appeals affirmed the lower court and stated the following:

We today hold that nonuse of an available seat belt, and expert testimony in regard thereto, is a factor which the jury may consider, in light of all the other facts received in evidence, in arriving at its determination as to whether the plaintiff has exercised due care, not only to avoid injury to himself, but to mitigate any injury he would likely sustain.[3] [363 N.Y.S.2d at 920, 323 N.E.2d at 166].

The Court indicated that the non-use of seat belts should be limited to the jury's determination of damages, and not be considered in solving the issue of liability. It held, moreover, that the burden of proving non-use rested upon the defendant. The Court stated at 363 N.Y.S.2d at page 920, 323 N.E.2d at page 166: "the issue should not be submitted to the jury unless the

---

**2.** For courts that have allowed the introduction of evidence regarding plaintiff's non-use of his seat belt, *see e. g., Melia v. Ford Motor Co.,* 534 F.2d 795 (8th Cir. 1976); *Henderson v. United States,* 429 F.2d 588 (10th Cir. 1970); *Benner v. Interstate Container Corp.,* 73 F.R.D. 502 (E.D. Pa.1977); *Pritts v. Walter Lowery Trucking Corp.,* 400 F.Supp. 867 (W.D.Pa.1975); *Spier v. Barker,* 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323

N.E.2d 164 (1974). For courts that have disallowed it, *see e. g., Vizzini v. Ford Motor Co.,* 72 F.R.D. 132 (E.D.Pa.1976); *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48 (Okl.1976); *Horn v. General Motors Corp.,* 17 Cal.3d 359, 131 Cal.Rptr. 78, 551 P.2d 398 (1976); *Miller v. Miller,* 273 N.C. 228, 160 S.E.2d 65 (1968).

**3.** In accord, *see Benner, supra,* n. 2.

defendant can demonstrate, by competent evidence, a causal connection between the plaintiff's nonuse of an available seat belt and the injuries and damages sustained." It is noted that the Appellate Court refused the argument that a jury would be incapable of segregating injuries caused by the initial impact from those attributable to the plaintiff's failure to fasten his seat belt where the segregation is based upon competent expert testimony.

In discussing the concept of mitigation of damages, the *Spier* court stated the following:

> As Prosser has indicated, the plaintiff's duty to mitigate his damages is equivalent to the doctrine of avoidable consequences, which precludes recovery for any damages which could have been eliminated by reasonable conduct on the part of the plaintiff . . . . Traditionally both of these concepts have been applied only to postaccident conduct, such as a plaintiff's failure to obtain medical treatment after he has sustained an injury. To do otherwise, it has been argued, would impose a preaccident obligation upon the plaintiff and would deny him the right to assume the due care of others . . . . We concede that the opportunity to mitigate damages prior to the occurrence of an accident does not ordinarily arise, and that the chronological distinction, on which the concept of mitigation damages rests, is justified in most cases. However, in our opinion, the seat belt affords the automobile occupant an unusual and ordinary unavailable means by which he or she may minimize his or her damages *prior* to the accident. Highway safety has became a national concern; we are told to drive defensively and to "watch out for the other driver". When an automobile occupant may readily protect himself, at least partially, from the consequences of a collision, we think that the burden of buckling an available

seat belt may, under the facts of the particular case, be found by the jury to be less than the likelihood of injury when multiplied by its accompanying severity. [363 N.Y.S.2d at 921, 323 N.E.2d at 167].

Though admissible, the non-use evidence will not be allowed carte blanche. First, the issue will not be submitted to the jury unless and until the defendant can demonstrate, by competent and satisfactory evidence, the extent that plaintiff's injuries could have been avoided by wearing a seat belt. The Second Restatement of Torts comment on apportionment of damages, Section 465, comment c, indicates that such evidence must be more than mere guesswork or speculation: "There must of course be satisfactory evidence to support such a finding, and the Court may properly refuse to permit the apportionment on the basis of mere speculation."

Secondly, if the defendant meets the above burden and the issue goes to the jury, the Court will charge the jury with the following or similar language:

> The failure by plaintiff to wear a seat belt, even if unreasonable, is not in and of itself a bar to his recovery. However, if you find that it was unreasonable for the plaintiff not to use a seat belt, and that he would not have received some or all of his injuries had he used the seat belt, then you may not award any damages for those injuries you find he would not have received had he used the seat belt. The burden of proving that it was unreasonable not to use the seat belt rests upon the defendant, as does the burden of proving that some or all of plaintiff's injuries would not have been received had he used the seat belt.

### V

The Court is most cognizant of the Virginia statute [4] hereinbefore cited which

---

4. Va. Code § 46.1–309.1(b) (1974 Repl.Vol.). Other states having similar statutes are as follows: Iowa Code Ann. § 321.445; Me.Rev.Stat. tit. 29, § 1368–a; Minn.Stat.Ann. § 169.685(4); Tenn. Code Ann. § 59–930.

states that failure to use a seat belt shall not be deemed to be negligence. A plaintiff's negligence, however, is pertinent only if the plaintiff's failure to exercise due care causes, in whole or in part, the accident. In ordinary usage the term is not applicable to acts which merely exacerbate or enhance the severity of one's injuries. The language of the court in *Noth v. Scheurer,* 285 F.Supp. 81 (E.D.N.Y.1968) is instructive:

> No New York authority has been found holding that there is any duty upon the driver or passenger of an automobile to wear a seat belt. Consistent with the sole New York case on point . . . the Court believes that at all events a passenger's failure to wear a seat belt is not related to the cause of the accident and consequently should not be considered as contributory negligence, although such failure may be causative factor in determining the extent of damages for which plaintiff should be allowed recovery. As stated '. . . the testimony of defendant clearly indicates that the collision would have occurred even if plaintiffs had been wearing seat belts. Failure to use them may have contributed to the severity of the injuries, but had no causal relationship to the occurrence of the accident.' It is hornbook law that the negligence of the plaintiff will not bar recovery unless it is also a proximate cause of the accident.[5] [citations omitted] [285 F.Supp. at 85].

The reasonableness or unreasonableness of a person's actions with respect to any issue is generally a factual question and at common law would be decided by the trier of fact. As a statute written in derogation of the common law is to be strictly construed,[6] the Court will not extend the statute in question beyond its clear meaning. Had the Virginia General Assembly intended § 46.1–309.1(b) when it was enacted in 1962 to bar the introduction of evidence pertaining to the non-use of a seat belt for purposes of mitigating damages, the Court opines that it would have specifically addressed the issue as did the Tennessee legislature in 1963. There, the legislature has foreclosed this defense with the proviso in Tenn. Code Ann. § 59–930 which provides that "in no event shall failure to wear seat belts be considered as contributory negligence, nor shall such failure to wear said seat belt be considered in mitigation of damages on the trial of any civil action." In Minnesota, also in 1963, the legislature foreclosed the introduction of evidence pertaining to the non-use of a seat belt for any purpose whatsoever. Minn.Stat.Ann. § 169.685(4) reads as follows:

> Proof of the use or failure to use seat belts, or proof of the installation or failure of installation of seat belts shall not be admissible in evidence in any litigation involving personal injuries or property damage resulting from the use or operation of any motor vehicle.

In the intervening years the Virginia General Assembly has not seen fit to adopt either of these examples. The Virginia Code only speaks to negligence. The Court holds that the Statute is not a bar to the introduction of the seat belt evidence in question for purposes of mitigation of damages.

And it is so ORDERED.

---

5. In accord, *see, e. g., Spier, supra,* 363 N.Y. S.2d at 921, 323 N.E.2d at 168.

6. "Statutes are not to be deemed to change a common-rule law by implication, unless the intention to do so is obvious." 73 Am.Jur.2d *Statutes,* § 185 (1974).