**Chris GARRETT, Appellant,**

v.

**DESA INDUSTRIES, INC., Appellee.**

**No. 82–1597.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 12, 1983.

Decided April 14, 1983.

Peter M. Sweeny, Alexandria, Va. (Ashcraft & Gerel, Alexandria, Va., on brief), for appellant.

John O. Easton, Washington, D.C. (Carr, Jordan, Coyne & Savits, Washington, D.C., on brief), for appellee.

Before PHILLIPS and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

ERVIN, Circuit Judge:

This is an appeal by Chris Garrett from a judgment entered by the United States District Court for the Eastern District of Virginia upon a jury verdict that denied Garrett recovery against Desa Industries, Inc. ("Desa"). Garrett sought damages for an eye injury suffered when a stud driver manufactured by Desa was discharged accidently causing a piece of metal to enter his right eye. Because the district court abused its discretion in limiting the scope of expert testimony and erroneously instructed the jury concerning Garrett's contributory negligence, we reverse and remand for a new trial.

## I.

On August 8, 1980, Garrett was working as a carpenter in Woodbridge, Virginia. At the time of his injury, he was erecting wood frames in the basement of a new house. The task involved driving nails through wood blocks into the cement walls. The nails were driven by a stud driver manufactured by Desa.

A stud driver operates similarly to the way a handgun operates. It employs a .22 caliber powder-activated cartridge, which is inserted into the tool's chamber. When the tool is fired, the gasses from the ignited powder drive a piston forward to strike the head of a nail which is located in the tool's barrel. The nail then is thrust through the barrel into the wood.

If the tool fails to fire, the unspent cartridge should be ejected. The cartridge is ejected by vigorously swinging the stud driver in an arching manner away from the operator's body. This motion is supposed to cause the cartridge to fall out of the tool through an opening between the barrel and the breech.

Garrett's injury occurred after the stud driver he was using failed to fire. Garrett attempted to eject the cartridge in the recommended manner, but the cartridge remained in the breech, even though the chamber had opened. Garrett then attempted to remove the cartridge by opening and closing the chamber, whereupon the cartridge exploded and shell fragments penetrated Garrett's right eye.

Garrett was not wearing safety goggles at the time of the accident. Desa provided safety goggles with the stud driver. Both came in the same box and a sticker attached to the box warned that goggles should be worn when operating the stud driver.

Garrett filed this action, based on diversity jurisdiction, on February 2, 1982. He asserted that Desa was liable on theories of breach of implied warranty of merchantability, negligent design, and negligent manufacture of the stud driver.

The parties engaged in extensive discovery. As part of that discovery, Desa furnished Garrett with mechanical diagrams of the stud driver. Garrett had those drawings photographically enlarged to be used as an exhibit at trial. On February 26, 1982, District Judge Albert V. Bryan issued a pre-trial order that provided, *inter alia,* that exhibits not objected to at the pretrial conference would stand admitted into evidence. Desa did not object at any time to the photographic enlargements.

Garrett also deposed Desa's named expert witnesses. None of those witnesses expressed any opinion about whether the safety goggles provided by Desa would protect an operator's eyes from the type of explosion that occurred here.

The case proceeded to jury trial on June 9, 1982, with Senior District Judge Oren R. Lewis presiding. On the first day of trial, Garrett moved the court *in limine* to order Desa to refrain from referring to or raising the issue of safety goggles at the trial. The motion was denied and Desa eventually raised the issue on cross-examination of three of Garrett's witnesses, but not on direct examination of Desa's witnesses.

During the trial, Judge Lewis severely restricted the scope of the testimony of Commander Alfred I. Cipriani, USN, Garrett's expert witness. That limitation prevented Cmdr. Cipriani from giving his opinion on the ultimate issue in the case, *i.e.,* whether the stud driver was negligently manufactured. The court also refused to allow Cmdr. Cipriani to refer to the photographic enlargements of the stud driver's design.

Judge Lewis further refused to give certain jury instructions requested by Garrett concerning contributory negligence and Garrett's nonuse of safety goggles. On June 10, 1982, the jury returned a verdict for Desa and Garrett thereafter filed this appeal.

## II.

Garrett claims that he is entitled to a new trial because Judge Lewis abused his discretion in limiting the scope of Cmdr.

Cipriani's testimony and erroneously instructed the jury on contributory negligence in connection with the failure to wear safety goggles.[1] We agree.

### A. *Scope of Expert Testimony*

Cmdr. Cipriani is a graduate of the United States Naval Academy with a Bachelor of Science degree. He also holds a Masters degree in mechanical engineering from the Navy's postgraduate school and is a registered engineer in three states. As a gunnery officer, Cmdr. Cipriani had responsibility for small arms and other ammunition and became familiar with the type of .22 caliber cartridges used in the stud driver. Prior to this case, Cmdr. Cipriani had no specific experience with stud drivers. Since becoming involved in the case, he has operated and examined the model used by Garrett and other stud driver models.

Garrett alleged that Desa negligently designed the stud driver and attempted to have Cmdr. Cipriani testify to that effect as an expert witness. Judge Lewis ruled, however, that Cmdr. Cipriani could not testify as to the design and manufacture of stud drivers; as a result, his testimony was limited to the findings of his tests on the particular instrument used by Garrett. Judge Lewis made this ruling because Cmdr. Cipriani "had no experience in the manufacture or use or working of stud guns prior to [his] examination in this case." Judge Lewis indicated that the only expert qualified to testify about the design of stud drivers would be someone from industry who actually designs them.

 While the determination of what an expert is qualified to testify about is normally within the discretion of the trial judge, that determination is reversible if it is a clear abuse of discretion. *Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962). Judge Lewis' limitation on Cmdr. Cipriani's

testimony amounts to a reversible abuse of discretion.

A witness may be qualified as an expert "by knowledge, skill, experience, training, or education." Fed.R.Evid. 702 (emphasis added). The "or" indicates that a witness may be qualified as an expert by any one of the five listed qualifications. *Dychalo v. Copperloy Corp.,* 78 F.R.D. 146, 149 (E.D.Pa. 1978), *aff'd,* 588 F.2d 820 (3d Cir.1978). It was error for Judge Lewis to rule that Cmdr. Cipriani was unqualified simply because he lacked one of the five qualifications, namely, prior experience with stud drivers. Cmdr. Cipriani was qualified by his education, knowledge, training, and skill as a holder of a Masters degree in mechanical engineering, professional engineer, and gunnery officer. Witnesses with qualifications similar to those of Cmdr. Cipriani have been qualified to testify in like situations. *See Holmgren v. Massey-Ferguson Inc.,* 516 F.2d 856 (8th Cir.1975) (professor of mechanical engineering with little experience with corn pickers qualified as expert to testify about picker's design); *Dychalo v. Copperloy Corp.,* 78 F.R.D. 146 (E.D.Pa. 1978), *aff'd,* 588 F.2d 820 (3d Cir.1978) (metallurgical engineer who had no experience with ramp qualified as expert to testify about construction and design of ramp); *Gardner v. General Motors,* 507 F.2d 525 (10th Cir.1974) (mechanical engineer who had no experience designing truck exhaust system qualified as expert to testify about design of that system).

We are not dissuaded from this view by those cases wherein mechanical engineers who had little experience concerning the design of a particular item were not allowed to testify about the item's design. *See Perkins v. Volkswagen of America, Inc.,* 596 F.2d 681 (5th Cir.1979) (design of automobile); *Poland v. Beaird-Poulan,* 483 F.Supp. 1256 (W.D.La.1980) (design of

---

1. Garrett also claims that a new trial is in order because of Judge Lewis' persistent questioning of and comments to the witnesses. While Judge Lewis certainly did participate to an uncommon degree in the questioning of the witnesses, we cannot conclude that this is a case,

*see, e.g., Pollard v. Fennell,* 400 F.2d 421 (4th Cir.1968) (case remanded for new trial because of improper interrogation of witnesses by district judge), where the trial judge's method of presiding amounted to a denial of a fair and impartial trial.

chainsaws). Cmdr. Cipriani not only was a mechanical engineer, but he had examined and tested stud drivers prior to trial and had previous experience with similar mechanisms as a gunnery officer. The stud driver is not so complicated a tool that someone with Cmdr. Cipriani's education and knowledge could not, even with his limited experience prior to this action, provide expert testimony.

A related issue is Judge Lewis' refusal to allow Cmdr. Cipriani to opine on the ultimate issue in the case, *i.e.*, whether the tool was unreasonably dangerous. That refusal is consistent with the judge's erroneous limitation on the scope of Cmdr. Cipriani's testimony. If Cmdr. Cipriani is qualified to testify about the stud driver's design and manufacture, he may render an opinion as to the ultimate issue in the case. Fed.R. Evid. 704.

▮ Judge Lewis also erred by not allowing Cmdr. Cipriani to refer to the diagrams of the stud driver. Pursuant to Judge Bryan's pre-trial order, all exhibits not objected to at the pre-trial conference were to stand admitted into evidence. Garrett listed the diagrams of the stud driver's design as proposed exhibits and Desa did not object to them at the pre-trial conference or afterwards. When Cmdr. Cipriani attempted to refer to the diagrams, however, Judge Lewis ruled, *sua sponte,* that Cmdr. Cipriani could not refer to them because he did not make them and Desa did not furnish them. The ruling was based on the misleading statement by Desa's counsel that the diagrams had not been provided by Desa; in fact, the diagrams were photographic enlargements of the mechanical drawings furnished to Garrett by Desa during discovery. Cmdr. Cipriani therefore was forced to describe the tool's design without the use of the diagrams.

### B. *Safety Goggles*

▮ On the first day of trial, Garrett moved the district court *in limine* to limit the issue of contributory negligence regarding Garrett's nonuse of safety goggles. The motion was denied and the issue was raised by Desa on cross-examination of three of Garrett's witnesses. Desa's two witnesses did not testify concerning the safety goggles. Garrett also submitted jury instructions concerning the safety goggles. The requested instructions forbade the jury from considering Garrett's nonuse of the safety goggles in determining his contributory negligence. Judge Lewis refused to give the requested instructions. Garrett, relying on *Wilson v. Volkswagen of America, Inc.,* 445 F.Supp. 1368 (E.D.Va. 1978), now argues that the requested instructions were refused erroneously. We agree.

In *Wilson,* the court considered the propriety under Virginia law of admitting evidence of the plaintiff's nonuse of seat belts. The case involved a products liability claim against the manufacturer of an allegedly defective automobile that was involved in an accident. The defendant-manufacturer sought to show that the plaintiff was not wearing seat belts at the time of the accident. The court determined that nonuse of seat belts is admissible only on the issue of damages, and not on the issue of liability. The underlying rationale is that nonuse of a seat belt does not itself proximately cause the car accident, but is relevant to the plaintiff's duty to mitigate damages.

Significantly, the court further reasoned that evidence of plaintiff's nonuse will not be submitted "unless and until the defendant can demonstrate, by competent and satisfactory evidence, the extent that plaintiff's injuries could have been avoided by wearing a seat belt." *Id.* at 1372–73, *quoting Spier v. Barker,* 35 N.Y.2d 444, 363 N.Y.S.2d 916, 920, 323 N.E.2d 164, 166 (1974). The court thus authorized the following jury charge:

> The failure by plaintiff to wear a seat belt, even if unreasonable, is not in and of itself a bar to his recovery. However, if you find that it was unreasonable for the plaintiff not to use a seat belt, and that he would not have received some or all of his injuries had he used the seat belt, then you may not award any damages for those injuries you find he would not have

received had he used the seat belt. The burden of proving that it was unreasonable not to use the seat belt rests upon the defendant, as does the burden of proving that some or all of plaintiff's injuries would not have been received had he used the seat belt.

*Id.* at 1373.[2]

We believe that the analysis in *Wilson* is both persuasive and directly applicable to the nonuse of safety goggles. The stud driver would have exploded whether or not Garrett was wearing safety goggles. His nonuse of the goggles was not a proximate cause of that explosion. Thus, since Desa did not demonstrate that Garrett's eye injury could have been avoided or would have been less severe had he been wearing the goggles, the requested jury instructions should have been granted. Furthermore, on remand, Desa may not introduce evidence of the nonuse unless and until it demonstrates the extent to which Garrett's injuries could have been avoided by wearing the safety goggles.

### III.

For the foregoing reasons, the district court's judgment is reversed and the case is remanded for a new trial in accordance with the instructions herein.

REVERSED AND REMANDED.

HAYNSWORTH, Senior Circuit Judge, concurring:

I agree that the instructions regarding the failure to use the safety goggles require a new trial, but I would limit the basis of our decision to that.

I agree that Commander Cipriani should have been accepted as an expert witness competent to testify respecting the design of the stud driver. The Commander was permitted to testify at length as to the perceived defect in the tool, however, and I think the plaintiff suffered no prejudice warranting reversal.

I also agree that plaintiff's counsel should have been allowed to use the enlarged photographs of the defendant's diagrams. It may have been there was some duty on the part of plaintiff's counsel to clear up the confusion regarding their origin, but, in any event, I do not think denial of the right to use them seriously impaired the effectiveness of the lawyer's presentation of the plaintiff's case.

I suppose that the safety goggles were designed and intended to prevent any injury from flying metal fragments, within certain limitations of size and velocity. The difficulty in this case, however, is that there is no proof of that, nor is there proof of the velocity at which the metal fragment was flying at the time it entered the plaintiff's unprotected eye or any relation of data respecting the size and velocity of that fragment to the design capabilities of safety goggles. The burden of proof was certainly upon the defendant to produce evidence which would support a finding that use of the goggles would have prevented any injury or minimized the harm. In the absence of such evidence, I agree that the instructions relating to the failure to use the goggles were misleading and inappropriate, requiring the granting of a new trial.

---

**2.** Although *Wilson* also involved the construction of a Virginia statute that prohibited the introduction of evidence regarding the use of seat belts on the issue of negligence, the district court's holding on the proper use of such evidence was reached independently of that statute. Indeed, the district court was compelled to explain why the statute did not also prevent the introduction of the evidence for the limited purpose authorized by the court. *Wilson,* 445 F.Supp. at 1373–74.