901 F.2d 349
 12 UCC Rep.Serv.2d 421, 30 Fed. R. Evid. Serv. 304
 In re MERRITT LOGAN, INC., Debtor-In-Possession.
MERRITT LOGAN, INC. d/b/a Rancocas Thriftway
v.
FLEMING COMPANIES, INC.; Fleming Foods of Pennsylvania,
Inc.; Hussman Refrigeration, Inc. and Engineering
& Refrigeration, Inc.,
Appeal of ENGINEERING AND REFRIGERATION, INC., at No. 89-1522
In re MERRITT LOGAN, INC. Debtor-In-Possession.
MERRITT LOGAN, INC. d/b/a Rancocas Thriftway,
v.
FLEMING COMPANIES, INC.; Fleming Foods of Pennsylvania,
Inc.; Hussman Refrigeration, Inc.; and
Engineering & Refrigeration, Inc.
Appeal of HUSSMAN REFRIGERATION, INC., at No. 89-1523
In re MERRITT LOGAN, INC. Debtor-In-Possession.
MERRITT LOGAN, INC. d/b/a Rancocas Thriftway,
v.
FLEMING COMPANIES, INC.; Fleming Foods of Pennsylvania,
Inc.; Hussman Refrigeration, Inc.; and
Engineering & Refrigeration, Inc.
Appeal of MERRITT LOGAN, INC., at No. 89-1524
In re MERRITT LOGAN, INC. Debtor-In-Possession.
MERRITT LOGAN, INC. d/b/a Rancocas Thriftway,
v.
FLEMING COMPANIES, INC.; Fleming Foods of Pennsylvania,
Inc.; Hussman Refrigeration, Inc.; and
Engineering & Refrigeration, Inc.
Appeal of FLEMING COMPANIES, INC. and Fleming Foods of
Pennsylvania, Inc. at No. 89-1525
 Nos. 89-1522, 89-1523, 89-1524 & 89-1525.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 11, 1989.
Decided April 23, 1990.
 
 Dennis L. Platt, (Argued), Terence P. Fenningham, Sweeney, Sheehan & Spencer, P.C., Philadelphia, Pa., for Engineering and Refrigeration, Inc.
 Edward C. German, (Argued), Jeffrey N. German, German, Gallagher & Murtagh, Philadelphia, Pa., for Fleming Companies, Inc. and Fleming Foods of Pennsylvania, Inc.
 Angelo L. Scaricamazza, Jr. (Argued), Naulty, Scaricamazza & McDevitt, Philadelphia, Pa., for Hussmann Refrigeration, Inc.
 Kell M. Damsgaard, (Argued), J. Gordon Cooney, Jr. (Argued), Morgan, Lewis & Bockius, Philadelphia, Pa., for Merritt Logan, Inc.
 Before HUTCHINSON, COWEN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 I.
 
 1
 In these consolidated appeals, the defendants, the seller, installer and manufacturer of a commercial refrigeration system, appeal separate money judgments that the United States District Court for the Eastern District of Pennsylvania entered in favor of the plaintiff, Merritt Logan, Inc. (Merritt Logan). Merritt Logan cross-appeals challenging several issues that the district court decided in favor of the defendants.
 
 
 2
 This action arose out of the failure of the refrigeration system that Merritt Logan, then the operator of a neighborhood grocery store in Philadelphia, purchased for use in its new venture, a supermarket in Willingboro, New Jersey. The damages awarded Merritt Logan included the cost of replacement and/or installation of the failed refrigeration system as well as the lost profits and spoiled product the jury found were a consequence of the system's failure. The damages awarded totalled $1,550,000. Of this total $1,000,000 was attributed to lost profits arising from the direct seller's breach of warranty. The district judge entered judgment, jointly and severally, against defendants, Fleming Companies, Inc. and Fleming Foods of Pennsylvania, Inc. (collectively referred to as "Fleming"), for this $1,000,000 award.
 
 
 3
 The jury awarded Merritt Logan damages totaling $550,000 on a negligence theory against two of the defendants: Engineering & Refrigeration, Inc. (E & R), the installer of the refrigeration system, and Hussmann Refrigeration, Inc. (Hussmann), the manufacturer of the system. Of this $550,000 total, the jury awarded Merritt Logan $400,000 for replacement and/or installation of the refrigeration system, $100,000 for spoiled product and $50,000 for lost profits. With regard to this $550,000 award, the jury found Hussmann was seventy percent negligent and E & R was thirty percent negligent. The district court entered judgments against these two defendants consistent with the jury's findings.
 
 
 4
 Fleming, E & R and Hussmann make various arguments concerning the damages awarded for lost profits. They say, under the applicable New Jersey law, lost profits are speculative and cannot be recovered because the supermarket was a new business. They also say that the evidence does not show with reasonable certainty that Merritt Logan would have had any profits. Hussmann and E & R also contend that the district court erred in instructing the jury on the lost profits issue and in various rulings on the admission of evidence concerning those losses.
 
 
 5
 E & R and Hussmann additionally contend that the damages awarded against them, jointly and severally, for replacement and/or installation of the failed system, lost product and lost profit, are economic losses not recoverable in negligence, since this case arose in a commercial context. According to the defendants, under New Jersey law, these damages can only be recovered in a claim for breach of warranty under the Uniform Commercial Code (U.C.C.).
 
 
 6
 Fleming also contends the district court erred in denying its motion for judgment notwithstanding the verdict on Merritt Logan's breach of warranty claim because the evidence was insufficient to show that Fleming was the seller of the refrigeration system to Merritt Logan under the U.C.C.
 
 
 7
 Fleming, E & R and Hussmann all argue that the district court erred in denying the motions they made for a mistrial when they learned, during trial, that Merritt Logan's cash register tapes and a letter concerning Merritt Logan's financing arrangements had not been produced when requested during discovery.
 
 
 8
 Finally, Hussmann argues that the $400,000 awarded for replacement and/or installation of the failed refrigeration system was excessive because it cost Merritt Logan substantially less for the actual purchase and installation of the system and that the evidence as to lost product was insufficient to support an award of $100,000.
 
 
 9
 In its cross-appeal, Merritt Logan challenges the district court's refusal to award pre-judgment interest on Merritt Logan's claims for breach of warranty. Merritt Logan says its claim for breach of the implied covenant of good faith and fair dealing should have been submitted to the jury. It also appeals the district court's entry of judgment notwithstanding the verdict, which set aside $200,000 in damages that the jury awarded Merritt Logan as a result of Fleming's premature demand for repayment of an inventory loan.
 
 
 10
 Both Merritt Logan and Fleming contend we should amend the judgment to impose the $1,000,000 award for lost profits against all defendants jointly and severally.
 
 
 11
 We will affirm the judgment of the district court in part and vacate and remand in part for the following reasons with respect to each issue:We do not believe the Supreme Court of New Jersey would follow or strictly apply to Merritt Logan's supermarket the so-called "new business rule" that provides that an award to a new business for lost profits is prohibited as an award of speculative damages. This supermarket had operated for about one and one-half years, and Mr. Merritt Logan (Mr. Logan), the principal shareholder of Merritt Logan, had extensive experience in the retail food business, albeit not as the manager of a supermarket. Moreover, we do not believe the New Jersey Supreme Court would apply the new business rule as a per se rule. We believe the New Jersey Supreme Court would allow damages for lost profits if these damages are proved with reasonable certainty. We also hold that the evidence in this case was sufficient to show with reasonable certainty that the supermarket would have earned the lost profits the jury awarded but for the problems with the refrigeration system.
 
 
 12
 We reject E & R's related attack on the portion of the jury charge that connected Merritt Logan's operation of its neighborhood grocery store to the supermarket for the purpose of applying the new business rule. Reading the charge as a whole we do not think the reference was misleading in light of the circumstances of the case, our prediction as to New Jersey's relaxation of the new business rule and the evidence of Mr. Logan's long and varied experience in the grocery business.
 
 
 13
 E & R and Hussmann's arguments on the admission of evidence fail to convince us that they are entitled to a new trial. We see no abuse of discretion by the district judge in admitting the challenged testimony.
 
 
 14
 Although we hold that the district court erred in submitting Merritt Logan's negligence claim against Hussmann to the jury, we conclude that the award against Hussmann is proper under a breach of warranty theory.[1] Accordingly, we uphold the jury's total damage award on this alternate theory.
 
 
 15
 Fleming's argument that Hussmann was the only seller under the U.C.C., and thus Fleming is not liable for breach of warranty under the code, overlooks the fact that all sellers who participate in distributing a product to a consumer are liable for breach of warranty. We therefore reject Fleming's argument that it was not a seller as defined in the U.C.C.
 
 
 16
 With regard to the late production issues, Fleming, E & R and Hussmann fail to tell us what was in the cash register tapes that Merritt Logan brought to trial after having failed to produce them during discovery. Accordingly, we are unable to conclude that the district court erred in denying a mistrial on that basis. The defendants have likewise failed to explain how they would have been helped if they had the letter from the government lending agency about Merritt Logan's working capital requirements any earlier. Moreover, no one moved for a continuance when the tapes and the letter appeared. Under these circumstances, the district court did not abuse its discretion in denying the motions for a mistrial based on the late production of documents.
 
 
 17
 Hussmann's argument that the jury's award for "replacement and/or installation" of the refrigeration system is limited to the amount Merritt Logan actually paid to purchase and install the refrigeration system is also without merit. There is evidence to support the jury's finding that it would have cost Merritt Logan $400,000 to replace the defective system with one that functioned properly. Moreover, no one objected to the wording of the special interrogatory that allowed the jury to consider replacement cost. The record also shows that the evidence was sufficient to support the jury's award of $100,000 against Hussmann and E & R for losses resulting from spoiled food products.
 
 
 18
 Turning to Merritt Logan's cross-appeal, we reject Merritt Logan's argument that the district court erred in denying its motion to assess prejudgment interest on its $1,000,000 judgment against Fleming for breach of warranty. New Jersey Court Rule 4:42-11(b), which Merritt Logan relies on, is limited to tort and products liability-type actions. The rule does not provide any basis for awarding Merritt Logan prejudgment interest on the jury's award against Fleming for breach of warranty. Finally, we summarily reject Merritt Logan's arguments that the district court erred in not submitting its breach of implied covenant claim to the jury and in granting judgment notwithstanding the verdict on its $200,000 award against Fleming for prematurely demanding repayment of an inventory loan.
 
 
 19
 With regard to the $1,000,000 award for lost profits, we believe the district court erred in entering judgment for this amount only against Fleming. Accordingly, we will remand this issue to the district court with instructions to amend the judgment to provide for joint and several liability against Fleming, Hussmann and E & R on this $1,000,000 award.
 
 II.
 A.
 
 20
 Merritt Logan is a Pennsylvania corporation organized in 1970 with its principal place of business in Philadelphia. Its principal shareholder is Mr. Logan, a businessman.
 
 
 21
 Since 1970, Merritt Logan has owned a grocery store in North Philadelphia known as Morris' Market. In 1983, Merritt Logan began to look for a second store. In the course of this search, Mr. Logan met Joseph Gilchrist (Gilchrist), an individual who had surveyed a location in Willingboro, New Jersey, for a potential purchase that never materialized. Gilchrist's survey forecasted that the Willingboro site could achieve weekly sales of $130,500 in 1985.
 
 
 22
 Utilizing Gilchrist's survey and information from Mr. Logan, Fleming prepared a pro forma operating statement that set forth anticipated revenues, expenses and profits for the proposed store. See Joint Appendix (App.) at 1440a-47a, 2894a-99a. Mr. Logan entered into a contract with Fleming licensing the store to operate under Fleming's "Thriftway" banner. Fleming agreed to supply food products to the store and to provide inventory financing. Merritt Logan also obtained financing through the New Jersey Economic Development Authority (EDA) for purchase and renovation of the building, purchase of equipment and working capital.
 
 
 23
 Merritt Logan initially decided to purchase a refrigeration system for the store directly from Hussmann, the manufacturer of the system. However, Fleming offered to guarantee Merritt Logan's payment in return for which Fleming would receive a four or five percent commission from Hussmann and Merritt Logan would receive a discount on the purchase price. Merritt Logan accepted Fleming's offer, restructured the transaction, and purchased the Hussmann system through Fleming. Fleming sent a purchase order to Hussmann and an invoice to Merritt Logan. Hussmann delivered the equipment directly to Merritt Logan. Merritt Logan also contracted with Fleming to have E & R install the system.
 
 
 24
 Merritt Logan opened the "Rancocas Thriftway" on November 9, 1985. Sales for the first week of operation totaled $174,000. Shortly thereafter, Merritt Logan began to have trouble with the refrigeration system. There were four breakdowns of the system during the store's first three months of operation. During the ensuing months, there were more breakdowns, and customers returned numerous items of spoiled food. These problems cut deeply into Merritt Logan's sales.
 
 
 25
 One week after the store opened, Fleming demanded repayment of $94,000 towards Fleming's inventory loan totalling $240,000. Fleming made this demand even though the $94,000 was not due for another three years. When Merritt Logan refused to repay the inventory loan, Fleming responded by canceling delivery of some products and threatening to terminate shipments altogether. Merritt Logan eventually paid Fleming $30,000 of the $94,000 that Fleming demanded.
 
 
 26
 Fleming subsequently terminated Merritt Logan's credit status and forced Merritt Logan to pay cash for all deliveries. In October, 1986, Fleming terminated all its agreements with Merritt Logan, thereby precluding Merritt Logan from continuing to operate as a Thriftway and depriving Merritt Logan of its major grocery supplier and advertiser. In May, 1987, the Rancocas Thriftway was forced to close and Merritt Logan filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania.
 
 B.
 
 27
 Merritt Logan instituted this action against the defendants in the bankruptcy court. The case was removed from the bankruptcy court to the United States District Court for the Eastern District of Pennsylvania. Merritt Logan claimed that the defective refrigeration system, lack of credit, lack of supplies and loss of the Fleming-owned Thriftway trade name caused the failure of its business. The defendants generally contended that under-capitalization of the business from the outset and Mr. Logan's mismanagement of the store caused its failure. At trial, Merritt Logan proceeded against all defendants under theories of strict liability, negligence, breach of contract and breach of warranty for supplying a defective refrigeration system. Merritt Logan also asserted claims against Fleming for breach of an implied covenant of good faith and fair dealing and for business coercion based upon its early demand for repayment of $94,000 on the inventory loan. Fleming brought a cross-claim against Hussmann and E & R, asserting they were responsible for any damages resulting from the defective refrigeration system.
 
 
 28
 Beginning in November, 1988, the case was tried to a jury. In December, 1988, the jury rendered a verdict on special interrogatories. It awarded Merritt Logan a total of $1,750,000. See Special Interrogatories to the Jury (Special Interrogatories), No. 13. The jury's principal findings were: (1) Hussmann negligently designed the refrigeration system; (2) E & R negligently installed the refrigeration system; (3) in this regard, Hussmann was seventy per cent negligent and E & R was thirty per cent negligent; (4) the refrigeration system failed to operate in accord with the terms, conditions and/or warranties of sale; (5) as a result of the defective refrigeration system, Merritt Logan suffered a total of $1,550,000 in damages, consisting of $100,000 for spoiled food products, $400,000 for repair and/or replacement of the refrigeration system, and $1,050,000 for lost profits;[2] (6) Fleming breached the terms of its inventory loan to Merritt Logan by prematurely demanding repayment of $94,000 before it was due; and (7) as a result of the breach of the loan agreement, Merritt Logan suffered $200,000 in damages.
 
 
 29
 The district court molded the verdict and entered judgment against Fleming in the amount of $1,200,000, against Hussmann in the amount of $385,000 and against E & R in the amount of $165,000.[3] See App. at 45a. The court also awarded judgment in the amount of $1,000,000 in favor of Fleming and against Hussmann and E & R, jointly and severally, on Fleming's cross-claim. All of the defendants filed motions for judgment notwithstanding the verdict and, in the alternative, for a new trial. Merritt Logan filed a motion for assessment of prejudgment interest. The court denied defendants' post-trial motions with respect to the jury's award for damages caused by the defective refrigeration system. However, with respect to Fleming's motion concerning breach of the loan agreement, the district court concluded that there was insufficient evidence to support the jury's damage award of $200,000. The court therefore granted judgment notwithstanding the verdict as to that part of the jury's damage award. Accordingly, in an order dated May 23, 1989, the district court reduced the judgment against Fleming from $1,200,000 to $1,000,000. The court granted Merritt Logan's motion for prejudgment interest on its tort claim but denied prejudgment interest on its breach of contract claims. The court also amended the judgment against Hussmann and E & R to impose joint and several liability upon them in the amount of $550,000 with judgment against Hussmann for its pro rata share of $385,000 and judgment against E & R for its $165,000 pro rata share. E & R, Hussmann and Fleming appealed to this Court and Merritt Logan cross-appealed, all raising numerous issues.
 
 III.
 
 30
 The district court had subject matter jurisdiction over this case pursuant to 28 U.S.C.A. Sec. 1334(b) (West Supp.1989) because it originated in a bankruptcy proceeding under Title 11 of the United States Code. All parties concede that New Jersey provides the controlling substantive law. Since the contracts involved were to be performed in New Jersey and the damages Merritt Logan suffered were all related to its New Jersey store, we see no reason to question the parties' choice of law. This Court has appellate jurisdiction under 28 U.S.C.A. Sec. 1291 (West Supp.1989) over the final judgment of the district court.
 
 
 31
 Our scope of review varies with respect to the individual issues the various parties raise. Therefore, we will separately set forth the applicable standard of review at the outset of our discussion of each issue.
 
 IV.
 
 32
 We deal first with the argument made by all defendants that because the Rancocas Thriftway was a new business, New Jersey law precludes Merritt Logan from recovering damages for lost profits. They rely on the "new business rule" embodied in several older New Jersey cases holding that lost profits of a new business are too remote and speculative to permit an award of damages. See Weiss v. Revenue Bldg. & Loan Ass'n., 116 N.J.L. 208, 182 A. 891 (1936); Adrian v. Rabinowitz, 116 N.J.L. 586, 186 A. 29 (Sup.Ct.1936); Kurtz v. Oremland, 33 N.J.Super. 443, 111 A.2d 100 (Ch.Div.), aff'd, 16 N.J. 454, 109 A.2d 286 (1954). The district court rejected the defendants' argument reasoning that Merritt Logan was not a new business, because it had operated Morris' Market in North Philadelphia for several years and the Rancocas Thriftway was opened and operated for about one and one-half years. Our scope of review of this legal issue is plenary. See, e.g., Dent v. Cunningham, 786 F.2d 173, 175 (3d Cir.1986).
 
 A.
 
 33
 We agree with the district court's conclusion, but for somewhat different reasons. Merritt Logan's operation of Morris' Market before opening the Rancocas Thriftway does not necessarily make the Rancocas Thriftway a pre-existing business. The two stores were quite distinct. Morris' Market was a relatively small neighborhood grocery store in North Philadelphia. The Rancocas Thriftway was a larger supermarket. However, it does seem proper to us to consider Mr. Logan's years of overall experience in the retail food business.
 
 
 34
 In addition, Merritt Logan's one and one-half year operating history at the Rancocas Thriftway weighs against application of the new business rule. The new business rule has usually been applied only to businesses with an operating history so brief that a reliable basis for projected damages is not possible. See, e.g., McBrayer v. Teckla, Inc., 496 F.2d 122 (5th Cir.1974) (nine and one-half month operating history); Lowder v. Missouri Baptist College, 752 S.W.2d 425 (Mo.Ct.App.1988) (fourteen day operating history); Delahanty v. First Pa. Bank, 318 Pa.Super. 90, 464 A.2d 1243 (1983) (seven month operating history). The one and a half years that the Rancocas Thriftway operated was enough time to permit a projection of damages for lost profits.[4] Even assuming the New Jersey Supreme Court would continue to adhere to the new business rule, we believe it would not apply the rule to the Rancocas Thriftway.
 
 B.
 
 35
 Moreover, we believe New Jersey would no longer follow a per se rule precluding all new businesses from recovering any damages for lost profits. The New Jersey cases that initially set forth the new business rule are more than fifty years old, and the New Jersey Supreme Court has not had recent occasion to consider the rule. Accordingly, we must predict whether the New Jersey Supreme Court would follow the rule against giving a new business damages for lost profits if it were now presented with that issue in the context of this case. See McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 661 (3d Cir.), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).
 
 
 36
 Although we have been directed to no recent New Jersey cases addressing the issue, the trend in other jurisdictions suggests that the district court was correct in stating that recent cases have relaxed the "harsh rule" embodied in the older case law. See Cope v. Vermeer Sales & Serv., 650 P.2d 1307 (Colo.Ct.App.1982); Fera v. Village Plaza, Inc., 396 Mich. 639, 242 N.W.2d 372 (1976); Cardinal Consulting Co. v. Circo Resorts, Inc., 297 N.W.2d 260 (Minn.1980); Ferrell v. Elrod, 63 Tenn.App. 129, 469 S.W.2d 678 (1971); Cook Assocs. v. Warnick, 664 P.2d 1161 (Utah 1983).
 
 
 37
 Indeed, a recent opinion of the United States District Court for the District of New Jersey, applying New Jersey law, has permitted a new business to recover loss of future profits. See Universal Computers v. Datamedia Corp., 653 F.Supp. 518, 525-27 (D.N.J.1987), aff'd without opinion, 838 F.2d 1208 (3d Cir.1988). That district court did not discuss the older New Jersey precedent; however, it reasoned that "once the fact of damages has been established 'the actual amount of lost profits may be estimated from the facts in evidence, including the inferences to be drawn from them and the probabilities they suggest.' " Id. at 527 (emphasis added) (quoting Gardner v. The Calvert, 253 F.2d 395, 399-400 (3d Cir.), cert. denied, 356 U.S. 960, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958)).
 
 
 38
 Analyzing the case law on this subject, one commentator has reasoned:
 
 
 39
 Recent cases have eroded the once generally accepted rule that lost profits damages for a new business were not recoverable. The development of the law has been to find damages for lost profits of an unestablished business recoverable when they can be adequately proved with reasonable certainty. The earlier cases are either ignored or rationalized as having been based on a finding that on those particular facts the evidence was inadequate as a matter of law to support a judgment for the plaintiff.
 
 
 40
 . . . . .
 
 
 41
 The trend of the modern cases is plainly toward replacing the old rule of law with a rule of evidence--the unquestionable principle that damages for loss of profits must be proven with reasonable certainty and that the evidence must support that finding by the trier of fact.
 
 
 42
 R. Dunn, Recovery of Damages for Lost Profits Sec. 4.2, at 220, 227-28 (3d ed. 1987 & Supp.1989) (citing cases).
 
 
 43
 The New Jersey version of the U.C.C. also rejects the new business rule. Section 2-708, N.J.Stat.Ann. Sec. 12A:2-708(2) (West 1962), allows a seller of goods to recover damages for lost profits for non-acceptance or repudiation when putting the seller in as good a position as performance would have done is inadequate. Comment 2 to Sec. 2-708 states:The provision of this section permitting recovery of expected profit including reasonable overhead where the standard measure of damages is inadequate, together with the new requirement that price actions may be sustained only where resale is impractical, are designed to eliminate the unfair and economically wasteful results arising under the older law when fixed price articles were involved. This section permits the recovery of lost profits in all appropriate cases, which would include all standard priced goods. The normal measure there would be list price less cost to the dealer or list price less manufacturing cost to the manufacturer. It is not necessary to a recovery of "profit" to show a history of earnings, especially if a new venture is involved.
 
 
 44
 N.J.Stat.Ann. Sec. 12A:2-708, Uniform Commercial Code Comment 2 (emphasis added).
 
 
 45
 Likewise, the reporters' comments to Sec. 352 of the Restatement of Contracts (Second), addressing uncertainty as a limitation on damages, reject the new business rule. The comment to Sec. 352, addressing the difficulty of proving lost profits, reads:
 
 
 46
 [I]f the transaction is more complex and extends into the future, as where the seller agrees to furnish all of the buyer's requirements over a period of years, proof of the loss of profits caused by the seller's breach is more difficult. If the breach prevents the injured party from carrying on a well-established business, the resulting loss of profits can often be proved with sufficient certainty. Evidence of past performance will form the basis for a reasonable prediction as to the future. However, if the business is a new one or if it is a speculative one that is subject to great fluctuations in volume, costs or prices, proof will be more difficult. Nevertheless, damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like.
 
 
 47
 Restatement (Second) of Contracts Sec. 352 comment b (1979) (citations omitted).
 
 
 48
 These authorities lead us to believe that the New Jersey Supreme Court, a court that has been in the forefront of the development of the common law and its adaptation to modern conditions, would no longer treat the new business rule as a per se rule. We believe that court would be persuaded by the overwhelming recent authorities holding that damages for lost profits are recoverable if proven with reasonable certainty. Therefore, Merritt Logan was not precluded from recovering lost profits as a matter of law.
 
 C.
 
 49
 We must still consider whether Merritt Logan showed with reasonable certainty that the Rancocas Thriftway would have earned profits if the refrigeration system had performed adequately.
 
 
 50
 In support of its anticipated revenues, Merritt Logan produced the following evidence: Gilchrist's survey forecasting weekly sales of approximately $130,500 from the Willingboro site in 1985, see App. at 118a-19a; the report of Merritt Logan's expert, L.E. Keller, Jr., concurring in the $130,500 forecast and stating it was "extremely conservative", see id. at 3252a-53a; Mr. Logan's testimony stating that the $130,500 projection was conservative, see id. at 118a; Merritt Logan's sales records showing that sales for the first week exceeded $174,000, see id. at 3208a; Fleming's pro forma operating statement prepared in reliance on Gilchrist's survey, showing expected weekly sales of $130,500; and the testimony of John Traub, Fleming's Store Development Manager, concerning the pro forma; see id. at 1435a-36a, 1440a-44a.
 
 
 51
 In order to show its expenses in relation to its revenue, Merritt Logan primarily relied on the Fleming pro forma prepared in March, 1985.[5] See App. at 2894a. The pro forma set forth the expected revenues, expenses and profits for the store for the next seven years. The expected revenues were based on the weekly sales figure of $130,500 in 1985. See App. at 125a. The expected expenses were primarily based on Fleming's experience with similar stores. See App. at 125a-27a.
 
 
 52
 Merritt Logan also presented the jury with a chart that reduced the profit figures from the pro forma to present value. See App. at 3314a. These projections showed $1,364,560 in lost profits for the seven year period used by Fleming in the pro forma. The projection showed lost profits of over $4,000,000 for a twenty-one year period. This evidence was more than enough to permit the jury to find that Merritt Logan proved with reasonable certainty that it sustained damages for lost profits totaling $1,050,000 because of the problems with the refrigeration system.
 
 D.
 
 53
 E & R also challenges the jury charge concerning the new business rule. E & R asserts that the court implied in the instruction that the new business rule was not applicable to this case.[6] Once the district judge has charged the jury, "[o]ur function is to determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury." Ayoub v. Spencer, 550 F.2d 164, 167 (3d Cir.), cert. denied, 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977); accord Bennis v. Gable, 823 F.2d 723, 727 (3d Cir.1987).
 
 
 54
 In this case we find nothing to indicate that the jury charge was unfair. In stating that Merritt Logan was an ongoing corporation, see supra note 6, the district court was, at most, exercising its limited prerogative to comment on the evidence. See United States v. Olgin, 745 F.2d 263, 268 (3d Cir.1984), cert. denied, 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985). Moreover, the district court went on to specifically state that any award for lost profits must be "fairly determined and reasonabl[y] certain to have occurred." In light of our holding that New Jersey would not apply the new business rule to this case, we find nothing unfair or inadequate about the jury charge as a whole.
 
 V.
 
 55
 In support of their motions for a new trial, Hussmann and E & R question some of the district court's rulings regarding the admission of testimony. We turn our attention now to these arguments, which relate to the testimony of Mr. Logan, Gilchrist, and Robert Grossman (Grossman). The admission or exclusion of evidence is a matter particularly suited to the broad discretion of the trial judge. Therefore, we review the district court's rulings in this area for abuse of discretion. See Stich v. United States, 730 F.2d 115, 117 (3d Cir.), cert. denied, 469 U.S. 917, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984); Joy Mfg. Co. v. Sola Basic Indus., 697 F.2d 104, 111 (3d Cir.1982).
 
 A.
 
 56
 With regard to Mr. Logan and Joseph Gilchrist, the defendants argue the testimony of these witnesses consisted of expert opinion and they were not qualified as experts. The defendants also argue the opinions expressed by these witnesses were speculative. The defendants challenge Mr. Logan's testimony as to damages for lost profits. They challenge Gilchrist's testimony concerning his survey of the Willingboro site where the Rancocas Thriftway was located. Among other things, Gilchrist testified that his survey forecast that the Willingboro site would have done $130,500 in weekly sales in 1985.
 
 
 57
 As this court has noted, "[t]he modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." See Teen-Ed, Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 403 (3d Cir.1980). Neither Mr. Logan nor Gilchrist were required to qualify as experts in order to offer opinion testimony concerning how lost profits could be calculated from facts they had perceived. See Fed.R.Evid. 701;[7] Teen-Ed, 620 F.2d at 402-404 (accountant's personal knowledge of plaintiff's balance sheets was sufficient to qualify him as a lay witness eligible under Rule 701 to testify as to how lost profits could be calculated); see also Joy Mfg. Co., 697 F.2d at 111-12 (district court abused its discretion in striking non-expert opinion testimony rationally based on witness's personal knowledge; such testimony is admissible under Rule 701).
 
 
 58
 Mr. Logan's personal knowledge of his business and Gilchrist's personal knowledge of how he prepared his survey were sufficient to make these witnesses eligible under Rule 701 to testify as to how lost profits could be calculated. Given the broad discretion accorded to the district court concerning the admission or exclusion of testimony, we cannot conclude that the district court abused its discretion in admitting the testimony of Mr. Logan or Gilchrist.
 
 B.
 
 59
 Grossman, a certified public accountant, testified as to how Merritt Logan's projections of lost profits were calculated. E & R argues that Grossman merely testified that he reviewed facts and figures and therefore did not form or express an expert opinion on the projections. Accordingly, E & R argues Grossman's testimony about the projections should not have been admitted or considered on the likelihood of whether the Rancocas Thriftway would achieve weekly sales in the amount claimed.
 
 
 60
 Grossman testified that, in his opinion, the manner in which the Fleming pro forma was formatted and prepared was consistent with the standards in the accounting industry for the preparation of projections of future profits. See App. at 1197a. He also testified that the inflation factor used in the projections in the pro forma for reduction to present value was reasonable. See id. at 1203a. Grossman offered expert opinion about a subject on which he was qualified to speak. Accordingly, we do not believe the district court abused its discretion in admitting Grossman's testimony.
 
 VI.
 
 61
 We deal next with Hussmann's and E & R's argument that the district court erred in submitting Merritt Logan's negligence claims to the jury because Merritt Logan was a commercial buyer who suffered only economic loss. As to this issue, our scope of review is plenary. See Dent, 786 F.2d at 175.
 
 
 62
 E & R and Hussmann contend that under New Jersey law a commercial buyer who does not suffer physical injury can only recover on a theory of breach of warranty under the U.C.C. and not in negligence. Therefore, they say, the U.C.C. exclusively governs Merritt Logan's claims and recovery under a negligence theory is not available.A.
 
 
 63
 At the outset, we quickly reject this argument in the case of E & R. It is unclear whether E & R raised this issue in the district court. Assuming that it did, E & R, the installer of the refrigeration system, provided services rather than goods to Merritt Logan. Article 2 of the U.C.C. applies to "transactions in goods." It does not govern agreements to provide services. See N.J.Stat.Ann. Sec. 12A:2-102 (West 1962); Chatlos Sys. v. National Cash Register Corp., 479 F.Supp. 738, 742 (D.N.J.1979), aff'd, 635 F.2d 1081 (3d Cir.1980), cert. dismissed, 457 U.S. 1112, 102 S.Ct. 2918, 73 L.Ed.2d 1323 (1982). Thus, the U.C.C. does not govern the relationship between Merritt Logan and E & R, and the code does not limit Merritt Logan's right to recover against E & R in negligence.[8]
 
 B.
 
 64
 The jury's damage award against Hussmann on a negligence theory poses a more difficult question. Hussmann raised this issue in the district court in a motion for partial summary judgment and in a motion for a directed verdict, both of which the district court denied. The controlling case is Spring Motors Distribs. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (1985).
 
 1.
 
 65
 In Spring Motors, the New Jersey Supreme Court held that "a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover ... for breach of warranty under the U.C.C., but not in ... negligence." 489 A.2d at 663.
 
 
 66
 There, a truck leasing company purchased Ford trucks from a dealer. Ford manufactured the trucks and equipped them with transmissions made by its supplier. Ford issued a limited warranty with each truck. The leasing company took delivery of the trucks and leased them to a customer. The trucks' transmissions failed, allegedly costing the leasing company damages in the form of out-of-pocket expenses, lost revenues, customer ill-will and replacement parts.
 
 
 67
 The leasing company brought an action against Ford, the truck dealer and the transmission supplier under breach of warranty, strict liability and negligence theories. It sought consequential damages for towing expenses, repair and replacement of parts, lost profits and the trucks' lowered market value.
 
 
 68
 The New Jersey Supreme Court held that the leasing company, a commercial buyer seeking damages for economic loss, could proceed against the defendants only in contract for breach of warranty under the U.C.C. and not in tort on theories of negligence or strict liability.[9] Id. at 674. The court stated that "the U.C.C. represents a comprehensive statutory scheme that satisfies the needs of the world of commerce, and courts should pause before extending judicial doctrines that might dislocate the legislative structure." Id. at 671. It reasoned:
 
 
 69
 Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damages that the parties have, or could have, addressed in their agreement.
 
 
 70
 Id. at 672.
 
 
 71
 Merritt Logan, like the plaintiff in Spring Motors, is seeking damages for economic loss resulting from its purchase of a defective product. However, because the defective refrigeration system caused damage to other property, namely, food stocks, Merritt Logan argues it can recover either in tort or for breach of warranty under New Jersey law. In support of this argument Merritt Logan primarily relies on ICI Australia Ltd. v. Elliott Overseas Co., 551 F.Supp. 265 (D.N.J.1982), Monsanto Co. v. Alden Leeds, Inc., 130 N.J.Super. 245, 326 A.2d 90 (Law Div.1974) and People Express Airlines v. Consolidated Rail Corp., 100 N.J. 246, 495 A.2d 107 (1985). We think all these cases are distinguishable.
 
 
 72
 Indeed, the New Jersey Supreme Court expressly distinguished ICI Australia and Monsanto in Spring Motors. There, that court held that ICI Australia and Monsanto differed because they involved, respectively, property damage caused by an accident and property damage recoverable under strict liability. See Spring Motors, 489 A.2d at 671-72. The damage to Merritt Logan's food stocks occurred at the core of a commercial transaction and is more akin to the damage suffered by the leasing company in Spring Motors than it is to the damage to the plaintiffs' property in ICI Australia and Monsanto. Moreover, in Spring Motors the Supreme Court of New Jersey suggested that the parties to a sales contract governed by the U.C.C. will presumably take the extent of the warranty offered into account when negotiating a price. See 489 A.2d at 671. The idea that the parties take the possibility of consequential damage into account in setting the price when they decide to exclude or include those damages from warranty coverage is apparent in a case between buyer and seller, like Spring Motors and the one before us. It is less apparent and more difficult to apply the concept of a negotiated price fairly in the context of damage from the general risks of accident. Thus, in case of accident, as contrasted with non-performance or inadequate performance by the seller, the parties' purchase agreement may not be conclusive and tort concepts of duty and foreseeability may provide the proper rule.
 
 
 73
 People Express, a case decided after Spring Motors, is more readily distinguishable. There, a railroad tank car caught fire, allegedly because of the defendants' negligence. By reason of the danger the fire posed, People Express was forced to evacuate its offices. People Express suffered no physical damage or personal injury but contended it suffered business-interruption losses as a result of the evacuation. The New Jersey Supreme Court held that a defendant's negligence that interferes with a plaintiff's business causing only economic loss, rather than property damage or personal injury, is compensable in tort, but applied a more limited foreseeability doctrine than would be usual for tort actions. See People Express, 495 A.2d at 118. People Express involved injury to non-contracting parties to whom a duty was owed under tort principles of foreseeability. It did not involve damages caused by defective goods to a buyer who contracted for their sale in a commercial transaction. People Express simply does not address or concern the rule established in Spring Motors limiting recovery for breach of warranty among contracting parties to damages allowable under the U.C.C. For these reasons, we conclude that New Jersey would not allow Merritt Logan an unqualified right to recover in negligence against Hussmann, and the cases cited by Merritt Logan do not support its contention that it is entitled to recover in tort against Hussmann.
 
 2.
 
 74
 If New Jersey followed the rule described in East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), that an injured party may recover in tort when the defective product causes damage to property other than the product itself, Merritt Logan's argument would be plausible.[10] See also Aloe Coal Company v. Clark Equipment Co., 816 F.2d 110 (3d Cir.) (suggesting that damage to property other than the defective product permits recovery in tort under Pennsylvania law), cert. denied, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987). However, we believe Spring Motors rejects this rationale in the context of actions between parties to contracts for the sale of goods in favor of the U.C.C. rule permitting consequential damages, including direct economic damage to other property, unless the parties' contract of sale excludes consequential damages. Where the seller's warranty is not so limited, there may be no material difference between the result in tort or warranty. Therefore, our analysis does not end with our conclusion that Merritt Logan is restricted to its U.C.C. remedies against Hussmann.
 
 
 75
 Because of its earlier erroneous rulings that Spring Motors did not apply to this case, the district court had no occasion to decide how, if at all, the jury's use of a negligence theory in awarding these economic losses adversely affected Hussmann. We believe it had no affect on the consequences the law visits upon Hussmann and Merritt Logan's dealings over the refrigeration system outside of the courtroom or on how they conducted the litigation itself. We also believe Spring Motors shows that New Jersey substantive law would not remain entangled in a definitional battle between tort and contract, the formal vestiges of the old common-law writs, unless the form used has substantive effect. Judges are no longer prisoners chained to the forms of action. We are instead free to inquire whether the form in which an action is cast affects its substance. Considering the economic inefficiencies that would result from relitigating this case, it is appropriate to inquire whether form had any effect on the substantive outcome of this case. On this record, we believe the jury would have awarded Merritt Logan an identical amount of total damages whether the claim against Hussmann had been based on negligence or breach of warranty.
 
 
 76
 In order to uphold the jury award on the alternate theory, we must first consider whether the parties against whom the jury has found had a full and fair opportunity to defend against the alternate theory; whether the evidence of record fully supports recovery on the alternate theory; and whether the jury's verdict is consistent with recovery on the alternate theory. All of these requirements are present here.
 
 
 77
 Since the parties' litigation conduct could be affected by differences between the two theories, we must be sure that Hussmann had a full and fair opportunity to present its defenses against the warranty theory. If Merritt Logan had proceeded solely on a negligence theory, or if it had been limited to that theory at trial, Hussmann might not have had any reason to contend that its warranty excluded liability for consequential damages. Here, however, Merritt Logan asserted the warranty theory from the beginning. Moreover, it is generally less difficult to prevail on a claim for breach of warranty than it is to prevail on a negligence claim. Unlike a breach of warranty claim, a negligence claim requires proof of fault. By comparison in a breach of warranty claim the plaintiff must only prove: (1) the defendant made the warranty; (2) the goods did not comply with the warranty; (3) the plaintiff suffered injury proximately caused by the defective goods; and (4) damages. See J. White & R. Summers, Uniform Commercial Code Sec. 9-1 (3d ed. 1988). Proof is generally easier in a warranty claim because the plaintiff need not prove fault.
 
 
 78
 In this case, when Merritt Logan established the elements necessary to show negligence, it likewise established the elements necessary to show that Hussmann breached the warranties applicable to the refrigeration system. Indeed, the jury found generally that the refrigeration system failed to operate as required by the "terms, conditions and/or warranties of the contract of sale." Special Interrogatories, No. 9. Although the jury's answers to the special interrogatories do not include a specific finding that Hussmann breached its warranty, they are nowhere inconsistent with that result.
 
 
 79
 Finally we must determine whether the jury could have awarded the same damages to Merritt Logan against Hussmann on a breach of warranty theory. The jury found that as a result of Hussmann and E & R's negligence, Merritt Logan incurred damages for lost product, lost profits and repair and/or installation of the refrigeration system. Absent express contractual limitation, these damages can be recovered in an action under the U.C.C. for breach of warranty.[11] See N.J.Stat.Ann. Sec. 12A:2-715 (West 1962); Seaman v. United States Steel Corp., 166 N.J.Super. 467, 400 A.2d 90, 93 (App.Div.), ("Damages consisting of loss of profits come within the category of consequential damages."), certif. denied, 81 N.J. 282, 405 A.2d 826 (1979). The jury specifically found that the sales contract for the refrigeration system did not limit the warranties at issue in this case.[12] See Special Interrogatories, No. 11. Although this Court questioned the parties at oral argument about any limitation on the U.C.C. warranties, the limitation issue was not raised by the parties in their briefs. Accordingly, we must accept the jury's finding that the warranties were not limited. Absent limitation of liability for breach of warranty, the award against Hussmann for damages consequential to Hussmann's breach of warranty was fully supported. Therefore, under the applicable New Jersey law, the damages the jury awarded Merritt Logan were proper damages recoverable from a seller, such as Hussmann, for breach of warranty.
 
 
 80
 Although the jury did not find Hussmann caused Merritt Logan damage for lost product or replacement and/or installation on a breach of warranty theory, it seems plain in light of the jury's answers to all of the interrogatories that if the case against Hussmann had not gone to the jury on the negligence theory, but only on the warranty theory, the jury would have awarded Merritt Logan an identical amount of total damages. Thus, the district court's error in submitting Merritt Logan's negligence claim against Hussmann to the jury had no substantive effect on the jury's determination of the amount of total damages the defendants caused Merritt Logan.
 
 C.
 
 81
 The fact that the total amount of damages was not affected by the jury's incorrect reliance on the negligence theory against Hussmann does not necessarily solve the related problems created by the jury's application of New Jersey's law on comparative negligence to find Hussmann seventy per cent negligent and E & R thirty per cent negligent, see Special Interrogatories, No. 7, and the district court's entry of judgment against Hussmann and E & R jointly and severally on the $550,000 damage award.
 
 
 82
 In making its seventy percent-thirty percent allocation, the jury apparently relied on the section of New Jersey's comparative negligence statute that requires a jury in negligence actions to make factual findings in the form of a percentage concerning the extent of each parties' negligence. See N.J.Stat.Ann. Sec. 2A:15-5.2 (West Supp.1989). This statute does not on its face apply to breach of warranty actions. Although the New Jersey Supreme Court has applied this statute to strict liability tort actions, see Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 406 A.2d 140, 146-47 (1979), we are aware of no New Jersey case law applying the comparative negligence statute to breach of warranty actions. However, Sec. 2-715(2)(b) of the U.C.C. provides that a buyer may recover only those consequential damages "proximately resulting from any breach
 
 
 83
 of warranty." See N.J.Stat.Ann. Sec. 12A:2-715(2)(b) (West 1962). Relying on Sec. 2-715 of the U.C.C., at least one court has applied comparative fault principles to breach of warranty actions.[13] See Signal Oil & Gas Co. v. Universal Oil Prods., 572 S.W.2d 320, 328-29 (Tex.1978). We see no reason on this record why the jury's finding as to comparative fault cannot be applied to a damage award based on both negligence and breach of warranty theories. Therefore, we will not disturb the jury's finding regarding comparative fault.
 
 
 84
 For similar reasons, we will not alter the district court's entry of judgment against Hussmann and E & R jointly and severally on the $550,000 amount. We do not think joint and several liability between Hussmann and E & R is precluded simply because recovery against one is based on breach of warranty and recovery against the other is based on negligence. Joint and several liability is commonly imposed in breach of warranty actions and in tort actions. Both Hussmann and E & R failed to comply with their legal obligations. Both failures were a substantial legal cause of Merritt Logan's losses. To deny Merritt Logan the benefit of joint and several liability simply because Hussmann is liable for its pro rata share of the $550,000 award based on a breach of warranty theory and E & R is liable for its pro rata share of the $550,000 award based on a negligence theory would exalt form over substance. Therefore we see no reason to alter the district court's entry of judgment against Hussmann and E & R jointly and severally on the $550,000 jury award.[14]
 
 VII.
 
 85
 Next, we deal with Fleming's contention that the district court erred in not granting its motions for judgment notwithstanding verdict or a new trial. In support of its argument, Fleming asserts that Hussmann, not Fleming, was the seller and therefore Fleming could not be held liable for breach of warranty for the problems Merritt Logan had with the refrigeration system. In reviewing the motion for judgment notwithstanding the verdict, we examine the record in the light most favorable to the plaintiff to determine whether there was any reasonable basis for the jury's verdict. See Dudley v. South Jersey Metal, Inc., 555 F.2d 96, 101 (3d Cir.1977). We review the district court's ruling on a motion for a new trial for abuse of discretion, where the denial of the motion is not based on the application of a legal precept. See Honeywell, Inc. v. American Standards Testing Bureau, 851 F.2d 652, 655 (3d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 795, 102 L.Ed.2d 787 (1989).
 
 
 86
 Fleming confuses its contract with Hussmann with its separate agreement with Merritt Logan. An individual who purchases goods from one party and then simultaneously contracts with a third party to resell those goods can be a seller from the third party's point of view. See American Container Corp. v. Hanley Trucking Corp., 111 N.J.Super. 322, 268 A.2d 313 (Ch.Div.1970). Whether Fleming was a seller here is fact dependent, and therefore the district court correctly submitted the question to the jury. Fleming implicitly concedes the factual nature of this issue in its brief by focusing on the evidence at trial. See Brief for Fleming at 12-17. We therefore examine the facts established at trial.
 
 
 87
 At the trial, Merritt Logan introduced the purchase order for the refrigeration system that Fleming sent Hussmann. App. at 2880a. James O'Shaughnessy (O'Shaughnessy), Hussmann's former branch manager, testified that Hussmann sold the refrigeration system to Fleming as follows: "Fleming issued a purchase order to Hussmann in response to a proposal and listing of all the equipment. We accepted that purchase order, put it through our system, shipped the equipment and sent them an invoice for it." App. at 2659a-60a. O'Shaughnessy further testified that Hussmann looked to Fleming to pay for the system. See id. at 2660a. A Fleming employee, John Traub, testified that Fleming bought the system and sold it to Merritt Logan. See App. at 1465a-66a.
 
 
 88
 There was, as the district court said, "abundant evidence" to show that Fleming was a seller. The jury had a rational basis for finding that Fleming was a seller of the equipment. Therefore, the district court did not err in denying Fleming's motion for judgment notwithstanding the verdict or a new trial on this issue.
 
 VIII.
 
 89
 We turn now to Fleming, Hussmann and E & R's motions for a mistrial because of late production of documents. They argue the district court erred in denying a mistrial based on the late production of cash register tapes and a letter from Merritt Logan's bond counsel to the New Jersey EDA regarding the capitalization of the Rancocas Thriftway. We review the district court's denial of a mistrial based on late production for abuse of discretion. See Allied Chem. Corp v. Daiflon, Inc., 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980).
 
 A.
 
 90
 During the course of discovery, the defendants made numerous requests for Merritt Logan's cash register tapes. Claiming they had been destroyed, Merritt Logan did not produce any tapes before trial. On the third day of trial, Mr. Logan stated that he did have tapes and he produced them in court the following day. Although it is clear that Merritt Logan should have turned over the tapes prior to trial, the defendants fail to tell us, even now, what information the tapes contained that might have helped their case if the tapes had been turned over at the appropriate time. Moreover, the defendants did not ask for a continuance to review the tapes and made no use of them at trial. Although Merritt Logan's act of withholding the tapes until trial was a flagrant abuse of the discovery process, we are not willing to second guess the trial court and hold that it abused its broad discretion in not granting a new trial on this basis without a showing of what effect withholding the tapes had on the case.
 
 B.
 
 91
 The letter at issue was a request by Mr. Logan's counsel to the EDA to allow Merritt Logan, rather than Mr. Logan personally, to provide the required $90,000 in financing to the Rancocas Thriftway. The existence of the letter was discovered during the trial testimony of an EDA official. Again, the defendants have not articulated any unfair surprise or prejudice from the late production of this letter. They were aware of the information in the letter because Mr. Logan had testified at trial that he or Merritt Logan as a corporate entity could pay the $90,000. See App. at 526a.
 
 
 92
 Unlike the issue of the register tapes, the defendants do not claim they made a specific discovery request to Merritt Logan for the letter. The defendants issued a subpoena to the EDA requesting the file, but the letter was apparently not included in the file. However, there is nothing to indicate this was Merritt Logan's fault.
 
 
 93
 For these reasons, the district court did not abuse its discretion in denying a mistrial based upon the late production of the cash register tapes or the EDA letter.[15]
 
 IX.
 
 94
 We next pass to Hussmann's arguments attacking the amounts the jury awarded. Hussmann challenges the amount of damages the jury assessed against it on two grounds. It first argues that the jury's award of $100,000 for lost product was not sufficiently supported by the evidence. Second, Hussmann contends the jury's award of $400,000 for the cost of replacement and/or installation of the refrigeration system should be reduced to the actual amount Merritt Logan paid for the purchase and installation of the system. Again, we review this evidence in the light most favorable to the plaintiff to determine whether there was a reasonable basis for the jury's verdict. See Dudley, 555 F.2d at 101.
 
 A.
 
 95
 We believe there was sufficient evidence to provide a reasonable basis for the jury's award of $100,000 in damages for lost product. Merritt Logan introduced evidence that it suffered four product losses, totalling approximately $50,000, during its first three months of operation. See App. at 298a-309a, 3059a-3103a. Mr. Logan testified that this amount was determined by counting lost products and recording their unit costs. See id. at 298a-309a. He also testified that the supermarket had additional unrecorded losses. See id. at 309a. Mr. Logan's testimony was corroborated by the meat manager of the Rancocas Thriftway. See id. at 955a-59a. Mr. Logan also testified he disposed of an additional $27,000 worth of spoiled food after the store closed. See id. at 380a-81a. A rational jury could infer from this evidence that Merritt Logan suffered damages in excess of the $77,000 worth of specifically identified food that spoiled as a result of the refrigeration system's failure to function as it should have. We believe this evidence and the inferences that could be drawn from it provide a reasonable basis for the jury's damage award of $100,000 for lost product.
 
 B.
 
 96
 We also conclude there was a reasonable basis for the jury's award of $400,000 for replacement and/or installation of the refrigeration system. Special Interrogatory No. 5 asked the jury to determine the cost of "replacement and/or installation" of the system. There is nothing in the record to indicate that the defendants objected to this interrogatory, and they have provided no basis for limiting this award to the amount Merritt Logan actually paid for the purchase and installation of the system.
 
 
 97
 In addition, Merritt Logan presented evidence to the jury that the cost of purchasing the refrigeration system in 1985 was $289,847[16] and the cost of installing the system was $99,500. App. at 2882a-83a. This evidence, showing that the total cost of purchasing and installing the system in 1985 was $389,347, was a reasonable basis for the jury's award of $400,000 for replacement and/or installation of the system.
 
 X.
 
 98
 E & R raises a challenge to the special interrogatories the district court submitted to the jury. E & R asserts the special interrogatories were "misleading and confusing to the jury" and "did not consider in any meaningful way the defenses raised by [E & R] against [Merritt Logan's] claim of lost profits and the failure of the business." Brief for E & R at 45-46.
 
 
 99
 The question of how special interrogatories are to be framed is committed to the discretion of the trial judge. See Worsham v. A.H. Robins Co., 734 F.2d 676, 690 (11th Cir.1984). The trial judge has considerable discretion so long as the special interrogatories present the case fairly. See Thorp v. American Aviation & Gen. Ins. Co., 212 F.2d 821 (3d Cir.1954); 9 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2506 (1971).
 
 
 100
 In this case we find nothing to indicate that the special interrogatories were unfair.[17] The fact that the trial court did not embrace E & R's theory of the case in the interrogatories does not render them unfair. Thus, the district court did not abuse its discretion in submitting the special interrogatories to the jury.
 
 XI.
 
 101
 Next, we address the question of whether Merritt Logan is entitled to prejudgment interest on the $1,000,000 in damages awarded on its contract claim against Fleming for breach of warranty. Merritt Logan contends New Jersey Court Rule 4:42-11(b) entitles it to prejudgment interest because: (1) its unliquidated claims, though sounding in contract, involve tort-like principles of liability, see Busik v. Levine, 63 N.J. 351, 307 A.2d 571, 583 (1973); and (2) its claims are similar to a personal injury products liability action based on express warranty, see Cipollone v. Liggett Group, 893 F.2d 541, 579 (3d Cir.1990); Collins v. Uniroyal, Inc., 130 N.J.Super. 169, 325 A.2d 854 (Law Div.1974). Although we are not bound by vestiges of common law forms that have no material affect on liability, we are not at liberty to ignore the express language of the New Jersey Court Rules, which are more akin to free-standing statutory commands than to common law principles. This case does not fall within the facts of the cases Merritt Logan relies on. Prejudgment interest awarded pursuant to Rule 4:42-11(b) is limited by the language of the rule to "tort actions, including products liability actions." Thus, under New Jersey's rule, Merritt Logan is only entitled to prejudgment interest on the negligence damages assessed against E & R. Since it sets forth no other basis for an award of interest, we will not disturb the district court's order denying Merritt Logan prejudgment interest on contractual claims for breach of warranty.
 
 XII.
 
 102
 Because of the judgment of $1,000,000 in favor of Fleming on its cross-claim against Hussmann and E & R, Fleming will not ultimately be responsible for payment of Merritt Logan's $1,000,000 judgment against it for lost profits provided the judgment on the cross-claim is collectible. Under the district court's orders, however, Merritt Logan has no judgment against Hussmann and E & R for the $1,000,000 and is unable to execute directly against them. Both Fleming and Merritt Logan contend we should amend the judgment by imposing the $1,000,000 award against all defendants jointly and severally. In Spring Motors, the New Jersey Supreme Court observed that in New Jersey, even in a suit between commercial entities, "it is consistent with the principle underlying Santor and with the intent of the Code's drafters to recognize a claim under the U.C.C. for economic loss in a breach of warranty action without regard to vertical privity." 489 A.2d at 676. This being the law, we can assume that the manufacturer of goods, Hussmann, also gave implied warranties of fitness for a particular purpose and merchantability. Recovery on that basis is consistent with the trial court's instructions. It charged the jury:
 
 
 103
 In any event, or in either event, Hussman[n], as the original manufacturer of the equipment, would be liable to Merritt Logan, Incorporated if the jury should find that the equipment was defective in the context of not being of the quality or capacity as bargained for by Merritt Logan, Incorporated in purchasing the equipment.
 
 
 104
 App. at 2437a.
 
 
 105
 We also believe that the functional approach set out in Spring Motors permits the imposition of joint and several liability on E & R, notwithstanding the fact that E & R only contracted with Fleming to provide services for Merritt Logan. E & R's contract with Fleming to install the system would, under New Jersey law, contain an implied warranty of good workmanship and, as the district court instructed the jury, Merritt Logan was a third party beneficiary of that contract. See id. at 2438a. While Spring Motors, strictly speaking, involves only an interpretation of the scope of the warranty provisions of Article 2 of the U.C.C., the New Jersey Supreme Court's general discussion of the differing rationales behind the award of damages in tort and contract supports extension of the Spring Motors rationale beyond sales of goods to other contracts. See 489 A.2d at 671-73. Even if Spring Motors is not so extended, on the facts of this case, E & R is jointly and severally liable on a warranty/contract theory because its implied warranty to do a good and workmanlike job in installing the system was breached when the system failed and that breach, along with those of Fleming and Hussmann, proximately caused Merritt Logan's $1,000,000 loss of profits.
 
 
 106
 The jury's answers to the special interrogatories do not clearly indicate that it intended the $1,000,000 award to be entered only against Fleming and the imposition of joint and several liability against all defendants does not make its answers to the special interrogatories internally inconsistent or unsupportable on the record. We believe the district court erred in molding the verdict to enter judgment on the $1,000,000 award only against Fleming. Therefore, we will remand this issue to the district court with instructions to amend the judgment to provide for joint and several liability against Fleming, Hussmann and E & R with respect to the $1,000,000 damages award for lost profits.[18]
 
 XIII.
 
 107
 For the reasons stated above, we will affirm the district court's orders (1) entering judgment in favor of Merritt Logan and against Hussmann and E & R, jointly and severally, in the amount of $550,000 with Hussmann responsible for a pro rata share of $385,000 and E & R responsible for a pro rata share of $165,000; (2) awarding Merritt Logan prejudgment interest only on the $550,000 award; and (3) entering judgment in favor of Fleming and against Hussmann and E & R, jointly and severally, in the amount of $1,000,000 on Fleming's cross-claim. We will vacate paragraph one of the district court's May 23, 1989 order entering judgment on the $1,000,000 award for lost profits in favor of Merritt Logan and against Fleming. We will remand this issue to the district court with instructions to award judgment in favor of Merritt Logan and against Fleming, Hussmann and E & R, jointly and severally, on the $1,000,000 award for lost profits.
 
 
 
 [1]
 The U.C.C. does not apply to E & R, which provided services and was not a seller of goods. Therefore, the U.C.C. does not preclude Merritt Logan's negligence claim against E & R
 
 
 [2]
 The $1,050,000 in damages for lost profits awarded against Hussmann and E & R was comprised of two parts: $1,000,000 on Merritt Logan's breach of contract/warranty claims and $50,000 on its negligence claims
 
 
 [3]
 The money judgments against Hussmann and E & R were computed by applying the jury's 70-30 percent assessment of Hussmann's and E & R's comparative negligence to the total damages of $550,000 that the jury awarded against those two defendants on Merritt Logan's negligence claims
 
 
 [4]
 Of course, the fact that the Rancocas Thriftway lost money during its operation instead of showing a profit does not preclude recovery of lost profits if it can show it would have earned money were it not for the defendants' actions. See Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J.Super. 437, 358 A.2d 805, 814 (App.Div.), certif. denied, 71 N.J. 503, 366 A.2d 658 (1976); see also United Roasters, Inc. v. Colgate-Palmolive, Co., 649 F.2d 985, 992-93 (4th Cir.), cert. denied, 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981); Western Geophysical Co. v. Bolt Assocs., 584 F.2d 1164, 1172 (2d Cir.1978)
 
 
 [5]
 Merritt Logan also presented the jury with two other projections of lost profits: (1) a projection similar to the pro forma but which included certain expenses--such as depreciation, real estate taxes and common area maintenance--that were not reflected in the pro forma and were not affected by the refrigeration problems, see App. at 3281a-83a; and (2) a projection based on an annual four percent increase in costs and revenues. See App. at 417a-19a. Both of these projections showed significant lost profits
 
 
 [6]
 The district court's jury charge regarding the new business rule was as follows:
 Ordinarily, a new business that has not opened its doors is unable to prove future loss of anticipated profits, because they are usually found to be too speculative and pure guess work. No verdict, of course, may be based on guess or mere speculation.
 In this case, however, Merritt Logan, Incorporated was, at the time it purchased the store--at the time it opened the Rancocas store--an ongoing corporation. It had and continues to own and operate another store in Philadelphia called Morris Markets. And the store in question and the Rancocas Thriftway store, did in fact operate for a period of time.
 Therefore, if the jury finds that one or more of the defendants is or are liable to the plaintiff, Merritt Logan, Incorporated, the jury may, in response to the specific interrogatories, determine the amount, if any, of lost profits that were proximately caused by that for which the defendants are found liable.
 To determine--or to award anything for lost profits, however, they must be such as may be fairly determined and reasonable [sic] certain to have occurred.
 App. at 2451a-52a.
 
 
 [7]
 Rule 701 reads:
 If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.
 
 
 [8]
 Alternately, some of the reasoning in Spring Motors Distribs. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (1985), could be construed to permit Merritt Logan to hold E & R liable on a contract theory. By considering E & R's liability on a negligence theory in accord with the authorities cited in the text, we avoid the necessity of flatly predicting whether the New Jersey Supreme Court would extend the rationale of Spring Motors to all contract cases. See infra at Part XII
 
 
 [9]
 In Santor v. A. & M. Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965), the Supreme Court of New Jersey held that a consumer could recover in strict liability against a manufacturer of a defective product for direct economic loss. The Spring Motors court found it unnecessary to reconsider Santor because Spring Motors involved an action between commercial parties. Santor involved a consumer transaction. See Spring Motors, 489 A.2d at 670. This case, like Spring Motors, arises in the commercial context
 
 
 [10]
 In East River, the Supreme Court expressly refused to reach the issue of whether "a tort cause of action can ever be stated in admiralty when the only damages sought are economic." See 476 U.S. at 871 n. 6, 106 S.Ct. at 2302 n. 6
 
 
 [11]
 Under the U.C.C., limitation of implied or express warranties and limitation of the right to recover consequential damages are governed by Sec. 2-316 and Sec. 2-719. See N.J.Stat.Ann. Sec. 12A:2-316 (West 1962); N.J.Stat.Ann. Sec. 12A:2-719 (West 1962)
 
 
 [12]
 We have also independently examined the record and asked the parties to supplement their briefing to refer us to the places in the record where any limitation appears. Neither they, nor we, have been able clearly to identify its presence or communication to the buyer. There is some evidence that Hussmann attempted to limit its responsibility to Fleming in the sales contract between them, but the record is unclear. There is nothing to show that Fleming limited its warranties
 
 
 [13]
 The New Jersey Supreme Court has noted that even under its comparative negligence statute, the term "comparative fault" can be substituted for the term "comparative negligence." See Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 406 A.2d 140, 146 (1979)
 
 
 [14]
 Because we uphold the entry of judgment, jointly and severally, on the $550,000 award and the award against E & R is based on a negligence claim, Merritt Logan is entitled to prejudgment interest on the entire amount under New Jersey Court Rule 4:42-11(b). Moreover, Hussmann does not challenge this award of prejudgment interest even in light of its argument, which we find meritorious, that Spring Motors allows Merritt Logan to recover against Hussmann only on a breach of warranty theory. Because we affirm the imposition of joint and several liability, and because Hussmann has not raised any potential problem with the prejudgment interest award, we see no reason to disturb the district court's award to Merritt Logan of prejudgment interest on the entire $550,000 damage award
 
 
 [15]
 We also reject E & R's argument that the district court abused its discretion in denying full discovery of Mr. Logan's personal financial records
 
 
 [16]
 We recognize that the record indicates Merritt Logan may have actually paid less than $289,847 for the system. See App. at 578a-81a
 
 
 [17]
 E & R also argues the special interrogatories indicate the jury awarded lost profits for the sale or design of the system and not for its installation. Thus, E & R contends the $1,000,000 judgment entered on Fleming's cross-claim against Hussmann and E & R, jointly and severally, should be assessed only against Hussmann and not against E & R. We find no merit in this argument
 
 
 [18]
 In its cross-appeal, Merritt Logan raises two additional issues. Both are without merit. First, Merritt Logan argues the district court improperly dismissed its claim for breach of the implied covenant of good faith and fair dealing. The district court did not explicitly direct a verdict as to this claim, and we believe the jury did in fact consider this claim in arriving at its verdict. Merritt Logan also contends that the district court erred in granting judgment notwithstanding the verdict as to the $200,000 amount that the jury awarded as a result of Fleming's premature demand to Merritt Logan to repay the $94,000 portion of the inventory loan. The jury gave no basis for this award. Since the jury's other findings on damages included all of the types of loss that the record shows Merritt Logan suffered, the district court did not err when it concluded that this additional $200,000 could not be for compensatory damages and therefore set it aside as punitive damages not properly recoverable in the commercial context of this case. We agree with the district court's conclusion that there was insufficient evidence to uphold the $200,000 award